JESSE POLLACK, Plaintiff, *v.* EDWARD JOSEPHY and Others, as Trustees of Comer & Pollack, Inc., and COMER & POLLACK, INC., Defendants.

Supreme Court, Special Term, Kings County, March 4, 1937.

*Alvin Jay Feldman*, for the plaintiff.

*Brodek & Eisner* [*Louis P. Eisner* of counsel], for the defendants.

STEINBRINK, J. The action is for a declaratory judgment. On March 1, 1920, the plaintiff, with others, organized Comer & Pollack, Inc. (hereinafter referred to as the corporation), at which time there was issued to the plaintiff one-half of the capital stock. From the time of its formation and until February 13, 1924, the plaintiff acted as director, officer and employee. On the latter date, because of financial reverses in the business of the corporation, all of the capital stock was transferred to Alexander H. Geismar (now City Court justice) in trust, for the purpose of having him negotiate with the creditors of the corporation for an extension of time in which to pay off the corporate obligations. On February 16, 1924, Mr. Geismar (now City Court justice), as trustee, entered into an agreement with the corporation, its creditors and their trustees, which recited the corporation's request for an extension of time in which to meet its obligations so as to permit a continuance of the business, and acquiescence in the said request by the creditors. Under the terms of the agreement all of the capital stock of the corporation was to be transferred to trustees appointed by the creditors and to be held by them " in trust during the life

of this agreement * * * and as security for the performance of Comer & Pollack, Inc., of all of the conditions and provisions of this agreement." The conditions imposed on the corporation related to the conduct of the business and the transfer to the trustees of the corporate assets. All of the funds of the corporation were to be deposited in a certain designated bank and were not to be withdrawn except under the direction of the trustees who were given full charge and direction of the affairs of the corporation " during the life of this agreement or until all the indebtedness to the said creditors shall have been paid." On or about June 16, 1936, the plaintiff demanded of the trustees an accounting with respect to the amount paid to the creditors. The accounting was refused unless the plaintiff accepted the same with the understanding that he no longer enjoyed any interest in the corporation. The plaintiff then started this action in which he seeks a decree establishing his equitable ownership of one-half of the stock of the corporation.

The defendants assert the Statute of Limitations as a defense. The defense is not available even though it be assumed that section 53 of the Civil Practice Act applies to an action for a declaratory judgment. The existence of an actual controversy is a necessary requisite to an action of this nature (*James* v. *Alderton Dock Yards*, 256 N. Y. 298) and it is not until the controversy occurs that the statute begins to run. It seems axiomatic that undisclosed conflicting claims between persons bearing a jural relationship do not constitute a controversy, for the word " controversy " implies conscious knowledge of its existence. From the claims now asserted by the parties the court assumes that the plaintiff never did suspect that the meaning which he assigned to the language of the contract did not conform to the understanding of the defendant trustees. He was advised of the conflicting interpretation when he made demands for the accounting. It was then that the cause of action accrued.

With respect to the meaning of the contract, it is the plaintiff's claim that upon payment in full to the creditors the business and assets of the corporation were to revert to the stockholders. The defendants, on the other hand, assert that the contract was intended as an assignment for the benefit of creditors and, as such, all rights of the debtor were cut off without any right of reversion or redemption. " The ascertainment of the substantial intent of the parties, as expressed, is the fundamental rule in the interpretation of all contracts. We must look to the agreement as a whole, to the matters with which it deals, to the circumstances under which it was made and thereby determine the true intent and purpose of

the parties, and if such intent and purpose is reasonably within the scope of the language used it must be taken to be a part of the agreement the same as if it were plainly expressed." (*Manson v. Curtis*, 223 N. Y. 313, at p. 320.) The agreement in suit recites that it was made for the benefit of all the parties thereto, including the corporation. Its dominant purpose was to insure to the creditors control over the assets of the corporation and the management of its business until all the debts existing at the time of the transfer were discharged and at the same time to permit the corporation to continue in business. Paragraph 16 reads as follows: " The intendment of this agreement is to place all of the assets of every nature and description of the said Comer & Pollack, Inc., and the future course and conduct thereof, entirely at the disposal of the creditors, and in consideration thereof and in reliance on the representations of Comer & Pollack, Inc., that it has turned over all of its assets to said creditors, the parties to this agreement hereby, in consideration thereof, release the said Comer & Pollack, Inc., from any further liability to them other than through the assets above mentioned, agreeing, however, that this will not be deemed a waiver if there be an over-plus of assets over liabilities; that the remainder shall be turned over to said Comer & Pollack, Inc." The provision for a remainder over to the corporation negatives the claim that this was an outright assignment for the benefit of creditors. That the parties intended to revest the corporation with all of its former rights on fulfillment of the terms of the contract is evidenced by the recital that the capital stock of the corporation was to be held by the trustees " in trust and as security for the performance of Comer & Pollack, Inc., of all the conditions and provisions of this agreement." This is not language of an absolute transfer. While some of the language of the agreement is not free from ambiguity, the agreement, read in its entirety in the light of the circumstances out of which it emerged, is implicit with an obligation on the part of the trustees to return to the corporation its right to self-government upon satisfaction of the obligations running to the creditors.

In accordance with the above there will be judgment for the plaintiff for the relief requested in the complaint. Proceed accordingly.