CLARKE et al. v. WALKER et al.—150 S. W. (2d) 1082.

Middle Section. February 17, 1941.

Rehearing Denied, March 19, 1941.

Petition for Certiorari Denied by Supreme Court, May 17, 1941.

Coffey & Coffey, Hopkins & Hopkins, all of Columbia, for appellants.

Pride Tomlinson, of Columbia, and Leroy H. Hammond, of Mt. Pleasant, for appellees.

HOWELL, J. The bill in this cause is filed under the Declaratory Judgment Law, section 8835 et seq. of the 1932 Code of Tennessee, asking a construction of certain language in a deed executed on November 19, 1907, and recorded in the Register's Office of Maury County, Tennessee, in Book 115 at page 279, in which language certain rights were reserved in the grantors.

The complainants are the successors in ownership of the grantors and the defendants the successors in ownership of the grantees of said deed.

The deed in question conveyed two tracts of land containing together about 135 acres.

This deed includes the following language with reference to the reservations in the grantors:

"To have and to hold the said property, unto the parties of the second part, their heirs and assigns, forever, except that the phosphate rock therein with the right to mine and remove the same is expressly reserved to the parties of the first part, their heirs and assigns, as hereinafter provided."

This said deed also contains the following language, to-wit:

"But the phosphate rock in the said land is reserved by the parties of the first part with all necessary privileges of ingress and egress to mine and remove the same, but such parts as are being mined and also such parts as are being used as drying yards, the right to use which is also reserved while mining is going on, shall be kept fenced off by the parties of the first part from the remainder of the farm."

This deed further contains the following language:

"It is the distinct understanding of the parties hereto that all the phosphate rock in the said lands hereby conveyed is reserved to the parties of the first part, their heirs and assigns, and it is not the purpose of this instrument to part with the title to the same. All necessary mining privileges to mine, dry and remove the same are likewise reserved to the parties of the first part, their heirs and assigns."

The bill then alleges that recently when they undertook to sell the rights reserved to them by this deed they were notified by the defendants that they would not be permitted to mine or remove any part of the phosphate muck or sand upon said land, stating that they had been advised by their counsel that the expression or language in said deed "phosphate rock" meant only the lump phosphate and did not include the phosphate muck or sand.

Complainants further allege that the reservation and exception of phosphate rock in said deed includes all phosphate whether lump, muck or sand upon said land and that a proper construction of the language of the reservation in the deed will so show, and that such construction is the proper and natural meaning of these words and it was so intended by the parties to said deed.

The bill then prays:

"That upon the hearing of this cause the Court construe the deed of record in Book 115, page 279, Register's Office, Maury County, Tennessee, and that the Court by its decree determine the rights of the complainants and defendants in the sand and much phosphate in the lands described in the bill, and that the Court order, adjudge and decree that under a proper construction of said deed of record in Book 115, page 279, Register's Office, Maury County, Tennessee, the complainants are the owners of all phosphate of every kind and character in, on and under the lands described in the aforesaid deed, and that they have the right under said deed to mine or cause the same to be mined and removed; and that the Court further by its

decree remove the cloud which the defendants have put upon the complainants' title to said phosphate by declaring, ordering, adjudging and decreeing that the grantees named in said deed registered in said Book 115, page 279, Register's Office, Maury County, Tennessee, to-wit, A. F. Walker and wife, Mrs. M. J. Walker, and their successors in title, did not acquire and do not own any interest of any kind or character in any phosphate whether it be sand, muck, or lump phosphate in, on and under the lands described in said deed, but that all the right, title, claim and interest in such phosphate is the property of the grantors in said deed, or their successors in title, and that the expression 'phosphate rock' as used in said deed was intended to include, and did include, all phosphate whether the same was sand, muck, or lump and that said grantors in said deed, or their successors in title to said phosphate, being the complainants hereto or their assigns, have the right to reserve said lands and to mine and remove or cause to be mined and removed all phosphate in, on and under said lands.''

The answer of the defendants is a general denial of the material allegations of the bill as to the rights of the parties under a proper construction of the language in question.

The cause was regularly heard by the Chancellor and his written findings of fact and opinion are as follows:

''This suit was instituted by complainants under and by virtue of our Declaratory Judgment Act to ascertain the respective rights of parties, litigants herein, arising out of certain reservations in a certain deed of conveyance, executed on November 19, 1907, which reservation are as follows:

''To have and to hold the said property, unto the parties of the second part, their heirs and assigns, forever, except that the phosphate rock therein with the right to mine and remove the same is expressly reserved to the parties of the first part, their heirs and assigns, as hereinafter provided.

''But the phosphate rock in the said land is reserved by the parties of the first part with all necessary privileges of ingress and egress to mine and remove the same, but such parts as are being mined and also such parts as are being used as drying yards, the right to use which is also reserved while mining is going on, shall be kept fenced off by the parties of the first part from the remainder of the farm. However, the complete possession of the said property, except the ownership of the phosphate rock and the mining privileges herein reserved, will be surrendered to the said parties of the second part as soon as it can be gotten from Lusk, who now has it under lease.

''It is the distinct understanding of the parties hereto that all the phosphate rock in the said lands hereby conveyed is reserved to the parties of the first, their heirs and assigns, and it is not the

purpose of this instrument to part with the title to the same. All necessary mining privileges to mine, dry and remove the same are likewise reserved to the parties of the first part, their heirs and assigns.

"The conveyors and conveyees in said instrument are now dead, and the owners by inheritance are now the litigants herein.

"It is the contention of complainants that by the words phosphate rock as used in said reservations there was meant to reserve all phosphate minerals on said land conveyed, including lump rock, sand or muck.

"It is the contention of defendants that by the words phosphate rock, as used in the said reservations there was meant to reserve only lump rock, containing phosphate minerals, on said land conveyed, and did not include sand or muck containing phosphate minerals.

"These contentions tersely outlined the positions taken by the respective litigants herein. Thus it would be deemed advisable to ascertain what is mean by the words phosphate rock as used in written instruments having to do with such minerals in the locality where the same is mined. The geologists, the chemical engineers, text books or pamphlets on the subject matter and dictionaries define the words phosphate rock, the same being a general term used, to mean 'all phosphate minerals consolidated (solid) or unconsolidated (disintegrated) found in the land where such minerals lay.'

"The fact, which the Court does not find, that there was no market for sand or muck at the time of the execution of said deed of conveyance, with the said reservations therein, is of no moment in ascertaining the meaning of the words phosphate rock. The thing reserved in said instrument was the phosphate minerals, whether in lump rock, sand or muck. It is a fact, as disclosed by the record, that prior to, at the time of and subsequent to the execution of said deed, sand and muck were mined and sold.

"How, under the foregoing statement, the words phosphate rock can mean only lump rock is beyond the Court's ken. Lump rock in the field in questoin either contains a great per cent of bone phosphate of lime or a small per cent of such, and this being true, which of the two grades does lump rock mean? Is it that grade of no or little value or is it that grade of great value?

"It is disclosed in the record and is made manifest by the statement of those who know, that in early mining those engaged therein used different forms in getting out said mineral. In some instances pick and shovel were used, sun drying and kiln drying were used by those operating mines. As time went on advanced science has resorted to the drag line, practically doing away with manual labor, and the old method, to all extents and purposes, has been discarded.

"It is the conclusion of the Court that the words phosphate rock as used in said reservations, meant and were so intended to mean by the parties thereto, to include lump rock, sand or muck containing phosphate minerals. Without further amplification a decree accordingly will be drawn.

"Thos. B. Lytle
"Chancellor"

A decree was entered in accord with the opinion of the Chancellor.

The defendants have perfected an appeal and have assigned errors as follows:

"1. Because the Chancellor below erred in overruling the written motion of the defendants, John Cecil Walker, and Mrs. Lela Benderman, to amend their answer by pleading the Statute Sections 8590 and 8592, of Michie's Tennessee Code, which motion was made in due season before all the proof had been closed and filed and before the hearing of the cause.

"2. Because the Chancellor below erred in holding that the deed dated November 19, 1907, was now subject to construction by his Court either upon the Declaratory Judgment Act or any other Act as the time for construction of the deed, if subject to construction, had long since elapsed and past prior to the filing of the bill in this cause.

"3. Because the Chancellor below erred in decreeing that the words 'phosphate rock' only used in the said deed sought to be construed was, or is, ambiguous and subject to construction.

"4. Because the Chancellor below erred in holding and decreeing that the testimony of unrelated periodicals, magazines, etc., were admissible as competent evidence and in allowing witnesses to testify as experts when they had not qualified as such, and over the written exceptions of each of the defendants as to competency of such evidence.

"5. Because the Chancellor below erred in holding that the local custom and usage of mining men in the year 1907 at the time the deed or instrument in question was written were not controlling in construing the language of the deed in question.

"6. Because the Chancellor below erred in decreeing against the greater weight and preponderance of the evidence as shown by the proof.

"7. Because the Chancellor below erred in decreeing that the deed in question was not to be construed most strictly against the grantors or the makers of the same.

"8. Because the Chancellor below erred in overruling and disallowing each and every exception that was duly made in writing by each of the defendants to certain evidence that the defendants insist is incompetent evidence in the cause.

"9. Because the Chancellor below erred in not dismissing complainant's bill and taxing them with the costs of the cause."

Assignments of error Nos. 1 and 2 have reference to the action of the Chancellor in not permitting defendants to amend their answers so as to plead the Statute of Limitations of ten years.

The answer in this cause was filed on November 9, 1939. On May 4, 1940, the defendants made their motion to be permitted to amend their answer by pleading the Statute of Limitations of ten years. The decree is dated May 13, 1940. The proof had all been taken before the motion was made, the last deposition having been sworn to on May 2, 1940.

Section 435, Gibson's Suits in Chancery in the subject of amendments to answers is:

"What Amendments May be Made to Answers. There is no limit to the character of amendments that may be made to an answer, except that after one defence has been set up and proof taken thereon, the Court will not allow another and inconsistent defence to be set up by way of amendment, or by a supplemental answer."

"Amendments may be allowed to correct (1) a mistake or error in a matter of fact or in the statement of a fact, or (2) a mistake in the admission of assets, or (3) to set up new matters of defence that have come to the defendant's knowledge since his answer was filed. Mistakes by counsel in drawing the answer, or in advising his client that it was not necessary to set up an omitted defence, may be corrected by prompt affidavit of the facts. But no amendment will be allowed in order to plead the statute of limitations, or the statute of frauds, unless, perhaps, where the application to amend is made with great promptness; nor will an amendment be allowed to set up any unconscientious defence. Where, however, such defences are defectively set forth, an amendment will be allowed to give the defendant the benefit of the defence he intended to set up."

"The Court is very reluctant to allow amendments after the proof has been taken; nor will it allow an amendment based on the ground that the defendant answered under a mistake of law. Amendments that contradict the statements in the first answer, or that change the ground of the defence, are inadmissible. The defendant must clearly show that it is due to justice to permit the defence already made to be altered in the manner proposed."

█ Under the circumstances there is no error in this action of the Chancellor. Further, the bill in this cause is one to construe language in a deed and pass upon the rights of the parties thereunder, and not to reform one, and the Statute of Limitations sought to be pleaded would not have applied.

The remaining assignments of error will be dismissed together.

The determinative question in this case is: What was meant by the use of words phosphate rock in the deed in question?

It appears from this record that the industry of mining phosphate rock for commercial purposes first appeared in this part of the country about 1900, and that the methods of mining same were possibly crude as compared with present day equipment and machinery, and that as a result of this many operators did not use or haul away any phosphate rock except that which was in lumps and could be easily handled by men with forks.

▇ However the record justifies the findings as a fact that phosphate sand or muck, was mined at the time the deed involved was executed, 1907, and that the expression "phosphate rock" was usually considered and understood to mean lump rock, sand or muck.

From the encyclopedias and text books it appears that calcium phosphate is the most abundant and important of the phosphates and makes up the larger part of so-called phosphate rock, from which is prepared large quantities of the soluble acid calcium phosphate used in making fertilizers. The rock itself is not suitable, because of its slight solubility, to be used by plants as a source of the phosphorous necessary for life, so it has to be converted into the soluable acid calcium phosphate.

From the examination of many authorities we believe that a fair definition of rock is given in the Columbia University's Encyclopedia which says that rock in geology is applied not only to the solid or bed rock, but also to the mantle rock, the fragments of which have been detached from the solid rock and overlie it, such as clay, sand, gravel and broken rock.

The Encyclopedia Brittanica Volume 21, page 323, says:

"Such unconsolidated materials as sand, gravel, clay are justly included among rock as being mineral masses."

The Professor of Geology at Yale University in his book entitled "Rocks and Minerals" says:

"A soft bed of clay or of volcanic ash, is as truly a rock as a mass of the hardest granite."

Webster's Unabridged Dictionary is giving the definition of the word "rock" says:

"Geologically; Mineral matter of any kind occurring naturally in large quantities.—May be consolidated (solid) or unconsolidated (disintegrated)."

Muck is defined in Webster's International Dictionary as "Earth (including soft earth, gravel, hard pan and rock) to be, or being excavated."

Machinery for the mining and handling of phosphate rock has been so improved in recent years that it is now profitable to ship all the phosphate rock including the lump rock, sand and muck.

"The owner of the mine may keep pace with the progress of invention and ingenuity, so far as is necessary to a profitable working of his property in competition with rivals. Hence, he may adopt new

and improved methods, which are usually availed of in the same business, when the use of them is necessary to him.'' Marvin v. Brewster Iron Mining Co., 55 N. Y. 538, 14 Am. Rep., 322, 330.

It is said that no mining was done upon this property for many years. The complainants and their predecessors in ownership owned this phosphate rock and have never parted with the title to it and the nonuser of a mine reserved in a deed of land will not of itself extinguish the right of the mine owner. Marvin v. Brewster Iron Mining Co., 55 N. Y., 538, 14 Am. Rep., 322.

The record further shows that the complainants have all along paid the taxes on the rights reserved by them and have continuously made efforts to sell them.

There may be some doubt as to the competency of some of the evidence of experts, magazine references and advertisements to which the defendants excepted, but considering the fact that this cause was heard by a Chancellor without a jury, and the nature of the testimony, and further that the finding of fact of the Chancellor is fully sustained by competent evidence and the main question involved was the meaning of a word, this action of the Court in overruling the exceptions could not have materially affected the result. In the determination of this case we have not considered any evidence of doubtful competency.

The record presents a real controversy and the complainants are entitled to a declaratory judgment as prayed.

We are in full accord with the findings of fact by the lower Court and finding no errors of law, the decree of the Chancellor wll be affirmed. The appellant will pay the costs of the appeal.

Crownover, P. J., and Felts, J., concur.