[S. F. No. 16494. In Bank. Feb. 29, 1944.]

THOMAS M. MAGUIRE et al., Appellants, v. THE HIBERNIA SAVINGS & LOAN SOCIETY (a Corporation) et al., Respondents.

[S. F. No. 16496. In Bank. Feb. 29, 1944.]

MINNIE B. EDWARDS et al., Appellants, v. THE HIBERNIA SAVINGS & LOAN SOCIETY (a Corporation) et al., Respondents.

[S. F. No. 16500. In Bank. Feb. 29, 1944.]

MARY F. CRILLY, Appellant, v. THE HIBERNIA SAVINGS & LOAN SOCIETY (a Corporation) et al., Respondents.

[S. F. No. 16503. In Bank. Feb. 29, 1944.]

KATE HAYES CROWLEY, as Executrix, etc., Appellant, v. THE HIBERNIA SAVINGS & LOAN SOCIETY (a Corporation) et al., Respondents.

M. Mitchell Bourquin, Keyes & Erskine, George Olshausen, Rosenshine, Hoffman, Davis & Martin, Heller, Ehrman, White & McAuliffe and Ross & Ross for Appellants.

Tobin & Tobin, Theodore J. Roche, Sullivan, Roche & Johnson, Garrett W. McEnerney, Garrett McEnerney II,

Maurice E. Harrison and Brobeck, Phleger & Harrison for Respondents.

GIBSON, C. J.—Plaintiffs in these four actions seek declaratory relief as successors in interest to alleged members of and depositors in defendant The Hibernia Savings and Loan Society, hereafter referred to as the society. Demurrers were sustained to amended complaints without leave to amend upon the ground that neither the first nor the second counts thereof stated a cause of action, and upon the specific ground that relief was barred by the statute of limitations and by laches. Special demurrers and motions to strike portions of the complaints were interposed but were not ruled upon by the trial court. The court did, however, grant motions of some of the individual defendants to dismiss the actions on the ground that declaratory relief was not "necessary or proper." (Code Civ. Proc., sec. 1061.) Judgments were entered in the four actions in favor of defendants. The appeals therefrom are submitted on a single set of briefs. Inasmuch as the amended complaints in the four actions contain substantially the same allegations and exhibits, we single out the complaint in the Maguire case for discussion of the facts and law involved in the several cases. The following statement of the facts is based on that complaint.

Defendant society was organized as a savings bank in 1859 under an act authorizing the formation of corporations "for the purpose of engaging in any species of trade or commerce." (Stats. 1853, p. 87.) The act provided for the formation of corporations having a capital stock and made no provision for corporations composed of members rather than stockholders. (See *People* v. *Perrin*, 56 Cal. 345.) The society's certificate of incorporation stated that the amount of its capital stock would be $600,000, consisting of 6,000 shares, and recited that the incorporators "have associated ourselves together for the purpose of forming a Society," and that "the object for which it is formed is, that by means of it the members thereof may be enabled to find a secure and profitable investment for small savings, and may have an opportunity of obtaining from it the use of moderate capital."

Bylaws and rules of order were adopted in 1859 governing the mutual rights, duties and privileges of members of

the society. It was provided therein that "Those who shall sign these by-laws . . . and pay the entrance fee of two dollars, shall be styled and considered members of this corporation. Those, who, in addition to the above, shall hold one or more shares of its stock, shall further be styled and considered stockholders. . . ." Members of the society were entitled to make deposits in sums of not less than $2.50 and were to be furnished with passbooks in which their deposits would be entered. It was further provided that "the fixed value of each share shall be One Hundred Dollars," and that whenever the amount to the credit of a depositor "shall form a full share, he shall be entitled to a certificate of stock, up to the number of twenty shares, the corresponding debt being entered on his passbook," and any "excess over this number shall become a simple deposit," which "shall share equally in all dividends . . . declared, or in losses . . . sustained." The bylaws could be amended only by three-fourths of the shares represented at a meeting of the society, and the rules of order, by a vote of three-fourths of the members present at a meeting.

In 1862 a statute was enacted specifically providing for the formation of corporations "for the purpose of aggregating the funds and savings of the members thereof and others." (Stats. 1862, p. 199.) It authorized the incorporation of savings banks with or without capital stock. In 1864 the act was amended to provide that "All corporations for the accumulation, preservation, and investment of funds and savings, and all associations or societies for the like purpose, claiming in good faith to be incorporated under the laws of this State, may avail themselves of the provisions of and become incorporated under this Act by filing with the County Clerk . . . and . . . Secretary of State, a certificate stating their intention and election to become so incorporated, which intention and election may be made and declared by the Trustees or Acting Trustees of such corporation, association, or society, or a majority thereof. . . ." (Stats. 1864, p. 531.) In August, 1864, defendant society, following favorable vote of its members, resolved to become incorporated under the amended statute and filed the required certificate, which recited that the society would have no capital stock.

On September 29, 1864, a new code of bylaws was adopted by the board of directors. Section 1, article 4, provided that all persons who were members of the society on August 29,

1864, should be deemed and considered members of the corporation; that as speedily as possible the signatures of such persons should be procured to an agreement on their part to become members of the corporation and ratifying the reincorporation; that others would be permitted to become members by vote of the directors and not otherwise; and that membership should not pass with the ownership of moneys deposited with or under the control of the corporation. On several occasions thereafter the board of directors amended the bylaws. In 1867, section 1, article 4, was amended to apply only to persons who were members on August 29, 1864, and whose accounts had not since been closed. In 1868, it was again amended to apply only to persons who, on August 29, 1864, "had respectively not less than one hundred dollars to his credit, and whose accounts were not subsequently at any time closed," and a provision was added that "such persons shall sign an agreement on their part to become members." In 1870 a further amendment provided that "All persons, who, on November 1st, 1870 had signed the agreement to become members of, and who then had accounts open with this corporation, are deemed and considered members thereof." In 1871, the date "November 1st, 1870" was changed to "January 1st, 1871." In 1874, the article was again amended to provide that "The only members of this Corporation are the persons who have signed the agreement hereinafter described, and who have kept accounts open with the Corporation since they respectively signed said agreement. Membership ceases when a member once closes his or her account." In 1886 another amendment added the provision that "Any person shall cease to be a member of this Corporation . . . who shall not have continuously and at all times, at least One Hundred Dollars to his or her credit upon an open deposit account on the books of this corporation." Later amendments made no substantial change relative to membership.

Section 6, article 22, of the bylaws of 1864 dealt with depositors who were not members and provided that "The board of directors shall have the right to determine the terms and conditions upon which deposits will be received from persons not members of the corporation, and to make contracts in the name of the corporation with such persons for that purpose. Until otherwise provided by such contracts,

depositors shall be entitled to the same share of profits as members.'' In 1868 the article was amended by deleting the reference to contracts authorized or made with depositors who were not members. In 1888, the provision was repealed and a bylaw adopted providing that ''the board of directors shall have the right to determine the terms and conditions upon which deposits will be received'' but that ''until otherwise provided by the board of directors, depositors who are not members shall get a dividend equal to that given to members.'' This provision was not later altered.

In the first count of the complaint plaintiffs claim membership in the society as assignees of Michael Maguire, who, it is alleged, entered into a ''contract of membership'' with the society on March 10, 1862, by signing the bylaws of 1859 and paying the entrance fee of two dollars. It is alleged that a passbook showing the payment of such membership fee and a deposit of $2,498 was issued to Michael Maguire as evidence of his contract of membership, that on October 5, 1922, he assigned to plaintiffs his account, membership, and all right and interest in the society, and that he and his assignees continuously maintained a deposit with the society which at the commencement of this action amounted to approximately $135. It is further alleged that it was the plan and intention of the incorporators that the society should be conducted as a membership corporation, wherein the members were to be the owners; that this plan was carried out by the members, stockholders, and trustees without objection, the members alone exercising the right to vote, elect trustees, amend bylaws, and hold meetings; that while the society issued shares of stock to certain members between June 14, 1859, and November 29, 1861, the outstanding shares were voluntarily surrendered and cancelled after the last mentioned date; that all but four certificates had been cancelled by June 27, 1863, the whereabouts of the four being unknown, and thereafter the society was composed of members only, none of whom held any shares of stock; that dividends were paid to members on their deposits while no dividends were ever declared or paid upon the outstanding stock; that the members were recognized and considered as the owners; that after the reincorporation of August 31, 1864, and until September 29, 1864, the society conducted its business as it had prior thereto, having the same members, trustees or di-

rectors, and bylaws; that on September 29, 1864, the directors, without authority, vote or consent of, and without any action by the members, purported to adopt the new code of bylaws mentioned above, and thereafter to amend the same from time to time, in an attempt to deprive existing members of their rights as members of the society.

It is alleged in the first count that plaintiffs claim the rights of a member which claim is controverted by defendants; that the individual defendants claim to be the only members of the society, predicating their claims to membership on election by the directors; and, that plaintiffs deny that defendants are members. It is further alleged that the society has accumulated a reserve fund of approximately $8,000,000; that defendants intend to reorganize the society into a capital stock corporation pursuant to section 29 of the Bank Act [Deering's Gen. Laws, 1937, Act 652; Stats. 1909, p. 87 as amended], convert the reserve fund into capital stock, and distribute the shares thereof among the individual defendants; and that by reason of the facts alleged, an actual controversy exists relating to the legal rights and duties of the respective parties under the written instruments and contracts and in respect to the property rights of the respective parties in the society.

The second count is based upon an alleged controversy regarding the nature and extent of plaintiffs' rights as depositors in the society. Plaintiffs here again claim as assignees of Maguire and, in addition to their admitted right to receive the amount of the deposits in their accounts together with accrued interest thereon, claim the right to share in the profits of the society, and assert that as depositors they have the "same rights in the reserve fund . . . as any member of said corporation." These claims are predicated, in part, upon the above-mentioned section 6, article 22, of the bylaws of 1864, and the 1868 and 1888 amendments thereto. The second count also alleges that neither Maguire nor his successors made any contract modifying or waiving any right as a depositor to the same share of profits or dividends as a member; that no provision to that effect was made by the society; and that after the reincorporation of 1864 no distribution of any dividend or profits was made to any depositor or to any member, but that all profits were accumulated in the reserve fund which defendants intend to con-

vert into capital stock and distribute among themselves. Finally, it alleges that an actual controversy exists by reason of the fact that defendants deny that plaintiffs have the rights claimed by them. The complaint requests the court to enter judgment ''construing the written instruments and contracts, and declaring the rights and duties of plaintiffs and defendants in said defendant corporation.''

Plaintiffs contend that the trial court erred in sustaining a demurrer to the complaint for want of facts. A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court. (Code Civ. Proc., sec. 1060; *Moss* v. *Moss,* 20 Cal.2d 640 [128 P.2d 526]; *City of Alturas* v. *Gloster,* 16 Cal.2d 46 [104 P.2d 810]; *Pacific States Corp. v. Pan-American Bank,* 213 Cal. 58 [1 P.2d 4, 981]; *Henderson* v. *Oroville-Wyandotte Irr. Dist.,* 207 Cal. 215 [277 P. 487]; *Andrews* v. *W. K. Company,* 35 Cal.App. 2d 41 [94 P.2d 605]; *Oldham* v. *Moodie,* 94 Cal.App. 88 [270 P. 688].) Both the first and second counts of the complaint herein allege that the existence in plaintiffs or their predecessor of the rights asserted by them is denied by defendants and that defendants intend to convert the reserve fund into capital stock and distribute the same in disregard of plaintiffs' claimed rights; both counts set forth the written instruments upon which plaintiffs base their controverted claims and pray for a judicial construction thereof. The complaint, therefore, shows that there is an actual controversy relating to the legal rights and duties of the respective parties.

Defendants, however, contend, in effect, that the complaint fails to state a cause of action for declaratory relief unless it appears therefrom that plaintiffs are entitled to a favorable declaration. They urge that the written instruments set forth may be construed on demurrer and if it appears that plaintiffs lack the rights asserted, they are not entitled to declaratory relief. Accordingly, defendants argue the merits of the controversy. This court has never expressly determined whether a complaint in an action for declaratory relief is defective if the facts alleged show that the plaintiff is not entitled to a favorable declaration. (See *Pacific States Corp.* v. *Pan-American Bank, supra,* at p. 64;

*Henderson* v. *Oroville-Wyandotte Irr. Dist.*, 207 Cal. 215, 216 [277 P. 487]; *Empire W. S. I. Dist.* v. *Stratford Irr. Dist.*, 10 Cal.2d 376 [74 P.2d 248]; *Haynes* v. *Annandale Golf Club*, 4 Cal.2d 28 [47 P.2d 470, 99 A.L.R. 1439]; *cf. Gore* v. *Bingaman,* 29 Cal.App.2d 460 [85 P.2d 172]; *Sunset Scavenger Corp.* v. *Oddou,* 11 Cal.App.2d 92, 95 [53 P.2d 188]; *Phelps* v. *Loop,* 53 Cal.App.2d 541 [128 P.2d 63].) Courts in other jurisdictions, however, have rejected the view that the legal sufficiency of a complaint in an action of this nature is to be tested by a determination of the merits of the claims or controversy alleged therein. (*Rockland Power & Light Co.* v. *City of New York,* 289 N.Y. 45 [43 N.E.2d 803]; *Bruckman* v. *Bruckman,* 60 Ohio App. 361 [21 N.E.2d 481]; *Merchants Mut. Casualty Co.* v. *Leone,* 298 Mass. 96 [9 N.E.2d 552]; *Cabell* v. *City of Cottage Grove,* 170 Ore. 256 [130 P.2d 1013]; see *City of Cherryvale* v. *Wilson,* 153 Kan. 505, 510 [112 P.2d 11]; Anderson, Declaratory Judgments, p. 275; 15 So.Cal.L.Rev. 268, 271.) And it has been held that where the plaintiff is not entitled to a favorable declaration, the court should render a judgment embodying such determination and should not merely dismiss the action. (*Frazier* v. *City of Chattanooga,* 156 Tenn. 346 [1 S.W.2d 786]; *Northwestern Nat. Ins. Co.* v. *Freedy,* 201 Wis. 51 [227 N.W. 952]; *Smith* v. *Pettis County,* 345 Mo. 839 [136 S.W.2d 282].) The rule is stated in Anderson, Declaratory Judgments, page 275, as follows: ''A declaratory complaint will not be dismissed because the court disagrees with the construction of the contract involved, contended for by plaintiff. A complaint in an action for declaratory relief which recites in detail the dispute between the parties and prays for a declaration of rights and other legal relations of the parties, states facts sufficient to constitute a cause of action against a motion to dismiss for insufficiency of the complaint.''

▉ The purpose of a declaratory judgment is ''to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation.'' (*New York Foreign Trade Z. Operators* v. *State Liquor A.,* 285 N.Y. 272 [34 N.E.2d 316, 319]; *cf. Hess* v. *Country Club Park,* 213 Cal. 613, 616 [2 P.2d 782]; *Jackson* v. *Lacy,* 37 Cal.App.2d 551, 561 [100 P.2d 313]; Borchard, Declaratory Judgments, pp. 279 et seq., 984; Anderson, Declaratory Judgments, p. 11.) ▉ To hold that a plaintiff on the wrong side of a controversy is not entitled to the security and relief against uncertainty

which a declaratory judgment affords would require us to read into the statute a limitation not there present. Section 1060 of the Code of Civil Procedure provides that a party may bring an action for "a declaration of his rights and duties in the premises" and that the "declaration may be either affirmative or negative in form and effect." It contains no suggestion that the pleader must allege facts entitling him to a favorable declaration. (Cf. Zimmer v. Gorelnik, 42 Cal.App.2d 440, 448 [109 P.2d 34]; Bank of America v. Gillett, 36 Cal.App.2d 453, 455 [97 P.2d 875]; In re San Joaquin L. & P. Corp., 52 Cal.App.2d 814, 825 [127 P.2d 29].) It follows, therefore, that both counts of the complaint state sufficient facts to constitute a cause of action.

Defendants cite Bogardus v. Santa Ana W. G. Assn., 41 Cal.App.2d 939 [108 P.2d 52], as being opposed to this view. In affirming the judgment there entered after the sustaining of a demurrer, the appellate court concluded that the complaint for declaratory relief did not state sufficient facts because, under the law applicable to the facts alleged, plaintiff did not possess legal rights in the fund in controversy. It does not appear, however, that the plaintiff argued or that the court discussed whether a complaint for declaratory relief is sufficient without regard to the merits of the controversy, and cases are not authority for propositions not considered. (See Cate v. Fresno Traction Co., 213 Cal. 190, 202 [2 P.2d 364]; Mortgage Guarantee Co. v. Chotiner, 8 Cal.2d 110, 114 [64 P.2d 138, 108 A.L.R. 1080].)

Defendants also argue that the decision in Moss v. Moss, 20 Cal.2d 640 [128 P.2d 526], establishes the propriety of the ruling here challenged. The Moss case holds that a trial court does not commit reversible error when in ruling on demurrer it exercises its discretion and refuses declaratory relief to a party of equal fault to an illegal transaction. It does not hold that the fact that a plaintiff is not entitled to a favorable declaration is a proper basis for the exercise of the trial court's discretion under section 1061 of the Code of Civil Procedure. By that section the trial court is given discretion to refuse to make a binding declaration of rights and duties, including a determination of any question of construction or validity arising under a written instrument or contract, "where its declaration or determination is not necessary or proper at the time under all the circumstances." That a party seeking judicial aid has "unclean hands"

may well justify a trial court in concluding that its adjudication would not be proper. ■ Availability of another adequate remedy may condition the necessity for declaratory relief. (*Communist Party* v. *Peek*, 20 Cal.2d 536 [127 P.2d 889].) ■ But the fact that the party seeking to set the judicial machinery in motion is on the wrong side of a controversy cannot be ascertained prior to the court's consideration and determination thereof, and it cannot be said that a declaration embodying that determination would not be necessary or proper merely because the plaintiff entertained a misconception of law. Thus, as previously noted, it has been held that where the plaintiff is not entitled to a favorable declaration, the court should render a judgment embodying such determination and should not merely dismiss the action. (Anderson, Declaratory Judgments, p. 271.)

■ A controversy regarding the status of one claiming membership in a corporation is a proper subject of a declaratory judgment (*Honetsky* v. *Russian Consol. Mut. Aid Society of America*, 114 N.J.L. 240 [176 A. 670] ; *cf. Haynes* v. *Annandale Golf Club*, 4 Cal.2d 28 [47 P.2d 470, 99 A.L.R. 1439]), and the nature of the controversy is essentially the same whether it is presented by the claimant or by the corporation. (See *Aetna Life Ins. Co.* v. *Haworth*, 300 U.S. 227, 244 [57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000].) We are of the opinion that the propriety or necessity for declaratory relief in this case is not dependent upon which party to the controversy seeks judicial aid. If the trial court should conclude upon a proper construction of the written instruments involved that plaintiffs are or are not members of the society, or that they are or are not entitled to share in the reserve fund, a declaration to that effect would guide the parties as to their future conduct. (See *Jackson* v. *Lacy*, 37 Cal.App.2d 551, 561 [100 P.2d 313] ; Anderson, Declaratory Judgments, p. 11; Borchard, Declaratory Judgments, p. 299.)

There are no other circumstances appearing on the face of the complaint which indicate that declaratory relief is not ''necessary or proper.'' ■ Defendants contend, however, that mandamus, quo warranto, and injunctive relief are available to plaintiffs for the protection of their rights and that the trial court had discretion to deny declaratory relief on the ground that it was not necessary or proper be-

cause of the existence of other remedies. Defendants do not point out, nor are we able to ascertain, upon what theory the suggested alternative remedies would be available to plaintiffs, or, if available, that they would be speedy or adequate or serve as well as or better than the remedy invoked. While some authorities limit a trial court's discretion to refuse to make a declaration on the ground that other remedies are available to cases where special statutory proceedings have been provided for the particular type of case or where other remedies would afford more effective relief (see Borchard, Declaratory Judgments, pp. 302-303, 325-331, 375; Anderson, Declaratory Judgments, pp. 521, 530; *cf. Communist Party* v. *Peek,* 20 Cal.2d 536 [127 P.2d 889]), all agree that before a court may properly exercise its discretion to refuse relief on that ground, it must clearly appear that the asserted alternative remedies are available to the plaintiff and that they are speedy and adequate or as well suited to the plaintiff's needs as declaratory relief. (See *Ermolieff* v. *R.K.O. Radio Pictures,* 19 Cal.2d 543, 549 [122 P.2d 3]; *Henderson* v. *Oroville-Wyandotte Irr. Dist.,* 207 Cal. 215, 216 [277 P. 487]; *Welfare Investment Co.* v. *Stowell,* 132 Cal.App. 275, 278 [22 P.2d 529]; Borchard, Declaratory Judgments, p. 293 et seq.)

█ Defendants further argue that the trial court properly exercised its discretion to refuse declaratory relief because plaintiffs assertedly abused leave to amend their complaint by failing to make averments called for by demurrers sustained to earlier complaints, by omitting allegations, and by making allegations contrary to those in earlier complaints. Abuse of leave to amend is not a ground for the exercise of the trial court's discretion under section 1061 of the Code of Civil Procedure. █ The procedure and practice with respect to amendments in declaratory actions is similar to that prevailing in ordinary actions at law and suits in equity (see Anderson, Declaratory Judgments, p. 287), and when a party in an action for remedial or preventive relief abuses leave to amend a pleading, the trial court may refuse to permit the filing of the amendment or may strike the amended pleading from the files. (See *Wheeler* v. *West,* 78 Cal. 95, 97 [20 P. 45]; 21 Cal.Jur. 190.) Moreover, the order granting the motion to dismiss indicates that the trial court acted solely on the basis of facts appearing on the face of the complaint. The order recites

that the motion is granted "although the demurrer . . . has been herein sustained upon the same ground, among others."

Plaintiffs next contend that it was error to sustain the demurrer on the ground that the alleged causes of action were barred by the statute of limitations and by laches. They argue, first, that the statute of limitations can have no application to an action for declaratory relief since the main allegation in such an action is the existence of an actual, and consequently, present controversy. (*Cf. Kirn* v. *Noyes,* 262 App.Div. 581 [31 N.Y.S.2d 90]; *Clarke* v. *Walker,* 25 Tenn.App. 78 [150 S.W.2d 1082].) The argument overlooks the fact that the nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code. (*Bell* v. *Bank of California,* 153 Cal. 234 [94 P. 889]; *Banks* v. *Stockton,* 149 Cal. 599 [87 P. 83]; see, also, Wood, Statute of Limitations [4th ed.], sec. 57a.) Actions for declaratory relief are included in the code definition of civil actions (Code Civ. Proc., secs. 22, 30), and section 312 of the Code of Civil Procedure provides that "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued." As stated in *Bogart* v. *George K. Porter Co.,* 193 Cal. 197, 201 [223 P. 959, 31 A.L.R. 1045], "The legislature has there specified the limitations applicable to a wide variety of actions, and then to rebut the possible inference that actions not therein specifically described are to be regarded as exempt from limitations, it has specified a four-year limitation upon 'an action for relief not hereinbefore provided for' (sec. 343); and where it has intended that an action shall be exempt from limitations it has said so in clear and unmistakable language. (Code Civ. Proc., sec. 348; Civ. Code, sec. 309 [now 364].)"

It is the general rule that a cause of action accrues when a suit may be maintained thereon, and the statute of limitations then begins to run. (*Dillon* v. *Board of Pension Commrs.,* 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800]; *Osborn* v. *Hopkins,* 160 Cal. 501, 506 [117 P. 519, Ann.Cas. 1913A 413].) While ordinarily a suit may be maintained only after the breach of an obligation (see *Hurt* v. *Haering,* 190 Cal. 198, 201 [211 P. 228]; *McKee* v. *Dodd,* 152 Cal. 637, 641 [93 P. 854, 125 Am.St.Rep. 82, 14 L.R.A.N.S. 780]; Pomeroy, Code Remedies [5th ed.], p. 528), the declaratory

judgment statute provides that "the court may make a binding declaration . . . whether or not further relief is or *could be claimed* at the time" and that "Such a declaration may be had before there has been a breach of the obligation in respect to which said declaration is sought." (Code Civ. Proc., sec. 1060.) (Italics added.) The availability of declaratory relief under such circumstances would seem to suggest that the ability to maintain a suit therefor is not the criterion for determining when the statute of limitations commences to run against an action of that nature. (But see *Salada Beach etc. Dist.* v. *Anderson,* 50 Cal.App.2d 306 [123 P.2d 86] ; *Pollack* v. *Josephy,* 162 Misc. 238 [294 N.Y.S. 219] ; Anderson, Declaratory Judgments, p. 282.) We are of the opinion that the period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for "coercive" relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred. On the other hand, if declaratory relief is sought "before there has been a breach of the obligation in respect to which said declaration is sought," or within the statutory period after the breach, the right to such relief is not barred by lapse of time. (See *Toomey* v. *Toomey,* 13 Cal.2d 317, 321 [89 P.2d 634].) There is no anomaly in the fact that a party may have a right to sue for declaratory relief without setting in motion the statute of limitations. Quiet title actions, forerunners of declaratory actions, may be maintained when an adverse claim to property is asserted, but the period of limitations does not commence to run at that date. (*Newport* v. *Hatton,* 195 Cal. 132 [231 P. 987] ; *Secret Valley Land Co.* v. *Perry,* 187 Cal. 420 [202 P. 449].)

 Plaintiffs next argue that no invasion of their rights or title has yet occurred and that, therefore, the present action is not barred by the statute of limitations nor by laches. With respect to the first count, however, defendants contend that plaintiffs' predecessor was excluded from membership after the adoption of, and pursuant to, the bylaws of September 29, 1864, that a remedy was then available to redress the wrongs thus inflicted, and that the statute of limitations was set in motion at that date. They argue that plaintiffs and their predecessor were denied the privileges

of membership and that the enactment of bylaws purporting to restrict membership to persons who had signed a particular agreement and whose accounts did not fall below $100 terminated the membership.

It does not appear from the allegations of the complaint that plaintiffs or their predecessor were deprived of the right to attend meetings, vote thereat, share in dividends or otherwise participate in the affairs of the society. Nor does it appear that they had knowledge of the passage of the bylaws, and the authorities agree that if lapse of time can bar an action by a stockholder to establish his interest in a corporation, it does not commence to run under the statute of limitations or doctrine of laches until the stockholder has knowledge that his rights are denied or that his status is controverted by the corporation. (*Yeaman* v. *Galveston City Co.*, 106 Tex. 389 [167 S.W. 710, Ann.Cas. 1917E 191]; *Mountain Waterworks Const. Co.* v. *Holme*, 49 Colo. 412 [113 P. 501]; *Owingsville & Mt. S. Turnpike Road Co.* v. *Bondurant's Adm'r*, 107 Ky. 505 [54 S.W. 718]; cf. *Cortelyou* v. *Imperial Land Co.*, 166 Cal. 14 [134 P. 981]; *Snyder* v. *Charleston & S. Bridge Co.*, 65 W.Va. 1 [63 S.E. 616, 131 Am.St.Rep. 947], 14 C.J. 840.) *Yeaman* v. *Galveston City Co.*, supra, was an action by the successor of an original stockholder of defendant corporation to establish his rights as a stockholder. Defendant contended that by a resolution passed more than sixty years before the action was commenced, the stock of plaintiff's predecessor had been repudiated and that, therefore, the action was barred by limitations. In rejecting the contention, the court stated at page 723 (167 S.W.): ". . . when a corporate act is invoked as a repudiation of a shareholder's stock or a conversion of its profits, before affecting his rights with limitation, it is only just to require that he or those standing in his stead have notice of it." Similarly, in *Mountain Waterworks Construction Company* v. *Holme*, supra, where plaintiff sought to have her status as a stockholder recognized, the court stated at page 510: ". . . if lapse of time can bar an action in such a case, it did not begin to run . . . until the company repudiated the relation, claimed the stock adversely, and brought the repudiation and claim to the knowledge of [the stockholder]."

Defendants contend that under the doctrine of stale claims lapse of time is a defense to an equitable action independent of statutory limitations or laches. They argue that

since the rights here sought to be declared had their origin in the contract of 1862 and since a determination of those rights requires an inquiry into transactions commencing in 1859, plaintiffs' claim of membership is stale and, consequently, barred. The policy of this state with respect to lapse of time is embodied in statutes applicable to both legal and equitable actions, and mere lapse of time, other than that prescribed by such statutes, does not bar relief. (*Wolpert* v. *Gripton*, 213 Cal. 474 [2 P.2d 767] ; *Burns* v. *Ross*, 190 Cal. 269 [212 P. 17] ; *Meigs* v. *Pinkham*, 159 Cal. 104 [112 P. 883] ; *Verdugo Canon Water Co.* v. *Verdugo*, 152 Cal. 655 [93 P. 1021].) ▉ The defense of stale claims is nothing more than a particular application of the doctrine of laches and is based on estoppel. (See 19 Am.Jur. 355.) Where, for example, an action is commenced many years *after its accrual*, the death of witnesses or destruction of evidence, presumed as well as actual, may prejudice the defendant and justify denial of relief because of staleness of the claim. (*United States* v. *Beebe*, 17 F. 36, affirmed 127 U.S. 338 [8 S.Ct. 1083, 32 L.Ed. 121] ; *Kleinclaus* v. *Dutard*, 147 Cal. 245 [81 P. 516].) While the opinion in *United States* v. *Beebe, supra,* at page 39, states "that lapse of time may be a good defense in equity, independently of any statute of limitations, and . . . that the doctrine rests not alone upon laches," the authorities there relied upon refer only to laches or use the terms laches and stale claims interchangeably. (*Brown* v. *County of Buena Vista*, 95 U.S. 157 [24 L.Ed. 422] ; *Badger* v. *Badger*, 2 Wall. (69 U.S. 94) 87 [17 L.Ed. 836].) Similarly, the opinions in *Garrity* v. *Miller*, 204 Cal. 454, 459 [268 P. 622], and *Emerson* v. *Kennedy Mining & Milling Co.,* 169 Cal. 718, 722 [147 P. 939], which quote from the Beebe case, use the terms interchangeably. Even the authorities which refer to staleness of claims as a distinct concept recognize that lapse of time is of no consequence in the absence of a showing of any act by the defendant in denial of the plaintiff's rights which would have required affirmative action by the plaintiff. As previously noted, the complaint does not show that plaintiffs or their predecessor had knowledge of the existence of the questioned bylaws, in the absence of which affirmative action was not required. ▉ The fact that determination of the controversy involves an investigation of rights originating many years past does not render the claim stale. (*Cf. Toomey* v. *Toomey*, 13 Cal.2d 317 [89 P.2d 634] ; *Williams* v. *Stillwell*, 217 C. 487 [19 P.2d

773] ; *Clarke* v. *Walker*, 25 Tenn.App. 78 [150 S.W.2d 1082].)

The second count does not disclose any past invasion of plaintiffs' alleged rights as depositors but, on the contrary, alleges that there has been equality of treatment between depositors and members in the past, and that distribution of the reserve fund in a manner inimical to plaintiffs' asserted rights is to occur in the future.

It does not appear from the face of the complaint, therefore, that the cause of action alleged in either the first or second count is barred by the statute of limitations or by laches.

We conclude that the trial court erred in sustaining the general demurrer to the complaint and in dismissing the action. In view of the conclusion that the complaint is sufficient against general demurrer, it is unnecessary to consider the merits of plaintiffs' claims and we express no opinion with regard thereto. Nor do we pass upon any of the grounds of special demurrer urged by defendants. It has been held that when a complaint is good against a general demurrer, it is an abuse of discretion for the trial court to sustain the demurrer without leave to amend because of defects in the form of pleading. (*Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358] ; *Olivera* v. *Grace*, 19 Cal.2d 570 [122 P.2d 564, 140 A.L.R. 1328] ; *Guilliams* v. *Hollywood Hospital*, 18 Cal.2d 97, 104 [114 P. 2d 1].) In sustaining the demurrer in this case the trial court expressly refused to consider the special grounds of demurrer. We are not inclined presently to pass upon the approximately two hundred grounds of alleged uncertainty, ambiguity and unintelligibility assigned by defendants in their demurrer and not ruled upon by the trial court. We do not decide that the complaint is not subject to special demurrer but send the cause back to the trial court, which may in its discretion require the clarification of uncertainties or ambiguities. (*Cf. Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713, 720 [128 P.2d 522, 141 A.L.R. 1358].)

The judgments in the four actions are reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Ward, J. pro tem., and Griffin, J. pro tem., concurred.

Respondents' petition for a rehearing was denied March 27, 1944.