Mary Teresa GENTRY and Vivian Clark Huntington, on behalf of themselves and on behalf of all members and depositors, and heirs and legatees of members and depositors, of The Hibernia Savings and Loan Society, Plaintiffs,

v.

The HIBERNIA BANK a, corporation, The Hibernia Bank, a corporation, as Executor of the Last Will of Richard Montgomery Tobin, also known as Richard M. Tobin, deceased, Joseph O. Tobin, Cyril R. Tobin, Edward J. Tobin, Constance De Young Tobin, Ruth Haskins Tobin, Abby Parrott Tobin, Celia Tobin Clark, Beatrice Tobin Raoul-Duval, Richard Raoul-Duval, Florence Adele Tobin, the Hibernia Bank, a corporation, as Executor of the Last Will of Charles J. Barry, deceased, Ernest O. McCormick, Jr., Leo O'Grady, Sheldon G. Cooper, Joseph O. Tobin, Trustee, Cyril R. Tobin, Trustee, Richard Raoul-Duval, Trustee, Ernest O. McCormick, Jr., Trustee, Leo O'Grady, Trustee, Sheldon G. Cooper, Trustee, and Does One to One Hundred, Defendants.

No. 35790.

United States District Court
N. D. California, S. D.
June 28, 1957.

C. Ray Robinson, T. Keister Greer, Eugene A. Mash, O'Gara, McGuire & Danielson, Walter McGovern, San Francisco, Cal., for plaintiffs.

Moses Lasky, Brobeck, Phleger & Harrison, James Farraher, Sullivan, Roche, Johnson & Farraher, San Francisco, Cal., for defendants.

HAMLIN, District Judge.

This case is before the Court on the defendants' motion to dismiss. The

scope of judicial inquiry in passing on such motions is customarily limited to the pleadings but the peculiar nature of this action and of one of the defendants' grounds for their motion [1] requires that consideration be given to the background and litigation history of this and similar actions. The source material for this review is the complaint, the affidavits on file and the cases which have been cited by counsel. Maguire v. Hibernia S. & L. Soc., 1944, 23 Cal.2d 719, 146 P.2d 673, 151 A.L.R. 1062; Bennett v. Hibernia Bank, 1956, 47 Cal.2d 540, 305 P.2d 20.

The Hibernia Savings and Loan Society (hereinafter referred to as the Society), the predecessor of the defendant Bank was a California corporation organized and incorporated in 1859. The by-laws of the Society provided that those who signed the by-laws and paid an entrance fee of two dollars would be considered members of the corporation.

Although there was some stock outstanding for a short period of time the corporation was conducted as a membership corporation, with the rights that are normally given to stockholders vested in the members.

In 1864 the Society was reincorporated under a new act of the California legislature and the new by-laws provided that all persons who were members of the old corporation as of August 29, 1864 would be deemed members of the new corporation, but that other persons could not become members of the new corporation unless so elected by the board of directors. The by-laws further provided that membership rights would not pass with the ownership of money on deposit with the Society.

From the Society's inception, interest was paid on the deposits, but an excess of profits was accumulated and held by the Society in a reserve fund.

In the late 1930's numerous actions were instituted in the California state courts by persons seeking a judicial declaration of their rights, as members of the corporation, to the reserve fund. The California Supreme Court in Maguire v. Hibernia S. & L. Soc., supra, held that these complaints stated a cause of action after the trial court had sustained general demurrers. However, it does not appear from the reporter system that these cases ever went to trial.

In 1945 the Society commenced an action against the world to determine who was entitled to membership, or proprietary rights in the corporation. This action was brought pursuant to Section 29a of the California Bank Act. (Calif. Gen.Stats.1945, p. 1017; presently Calif. Financial Code, §§ 671.1–671.17.) In this action a judgment of the Superior Court of the City and County of San Francisco, rendered in 1946, held that the fifteen individual defendants of the instant complaint were the only persons so entitled. In 1947 a reorganization of the Society changed it from a membership to a stock corporation with a capitalization of $7,000,000 and the name of the corporation was changed to The Hibernia Bank. The stock was divided among the fifteen defendants named in this action.

After the 1946 judgment became final, suit was brought in the California courts against the same defendants that we have in the instant action in which certain plaintiffs sought declaratory relief to determine their rights in the defendant Bank. As happened in the Maguire case, supra, the Supreme Court of California held that the complaint stated a cause of action after the trial court had sustained a general demurrer. Bennett v. Hibernia Bank, supra.

The filing of the instant complaint was accompanied by a novel but unsuccessful maneuver by plaintiffs' counsel. The instant complaint alleges federal jurisdiction to be based on diversity of citizenship and the required jurisdictional amount. On the same day that this complaint was filed, and probably simultaneous with its filing, fifty-nine other per-

---

1. The defendants have asked that the action be dismissed "in the exercise of judicial restraint".

sons with similar claims and the same counsel, but who lacked the required diversity, moved to intervene. The motion was denied by Judge Goodman of this District. Gentry v. Hibernia Bank, D.C.1956, 154 F.Supp. 62.

Two days after the instant complaint and complaints in intervention were filed in this Court, identical complaints, with the same parties, were filed in the California state court.

I believe that this background material will aid in the understanding of the instant complaint, the defendants' motion to dismiss it and my reasons for sustaining that motion.

In a lengthy complaint the individual plaintiffs, on their own behalf and on behalf of a number of other persons similarly situated seek to judicially establish their proprietary rights in the defendant Bank. The named plaintiffs look to an ancestor, one Phillip Murphy, who had dealings with the Society in the 1860's, for the basis of their cause of action.

The complaint is in four counts. The first count alleges that the plaintiffs' ancestor, Phillip Murphy, became a member of the Hibernia Savings and Loan Society, predecessor of the defendant Bank, in 1866, and pursuant to the by-laws in existence at that time, was entitled to share in the accumulated profits the Society derived from its banking enterprise and that this right descended to the plaintiffs. The second count is similar to the first, differing only in that it alleges that the plaintiffs are entitled to the same rights by virtue of the fact that Phillip Murphy became a *depositor* in 1866. Counts three and four in effect allege that the 1946 judgment of the San Francisco Superior Court in which the fifteen individual defendants in this action were adjudged to be the only persons entitled to a proprietary interest in the defendant Bank was procured by fraud.

The prayer of the complaint requests that the Court construe the various judgments, statutes and by-laws that affect the controversy and declare the rights and duties of the plaintiffs and the individual defendants in the Bank and the property and assets thereof; that the 1946 judgment of the California court be held to be void and of no effect; that it be adjudged that the individual defendants hold the stock and reserve fund as constructive trustees for the benefit of the plaintiffs; and that the defendants account to the plaintiffs for the stock and reserve fund.

The defendants assign various and alternate grounds for their motion to dismiss. They contend that all counts should be dismissed for lack of venue, lack of indispensable parties or in the exercise of judicial restraint in view of the pendency of state court litigation; that the first count should be dismissed for failure to state a claim upon which relief can be granted; and that the second count should be dismissed for lack of jurisdictional amount.

After argument on all the various grounds was had, time was set for additional argument on the jurisdictional amount of the second count.

■ This is an action involving a California corporation, the construction of a California statute and the validity of a judgment of a California court. It is purely local in character and is in this Court only on the happenstance of diversity of citizenship. The fact that the plaintiffs, along with the unsuccessful interveners, have filed an identical complaint in the state court indicates that they do not fear the impartiality of the state tribunal toward non-residents that originally gave rise to diversity jurisdiction in federal courts. Pease v. Peck, 1855, 18 How. 595, 599, 15 L.Ed. 518. It is quite obvious that the instant complaint was intended to serve as a foothold for the complaints in intervention and the filing of identical complaints in the state court discloses an attempt to use the federal court as a weapon, rather than a field, of legal combat. For this reason alone I would be inclined to dismiss the complaint, but to do so might be said to infringe on the principles set forth by the Supreme Court in Meredith v. City of Winter Haven, 1943, 320 U.S.

228, at page 236, 64 S.Ct. 7, 12, 88 L.Ed. 9, where that court said:

> "Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine."

However, there are other grounds upon which a dismissal can be based. The complaint prays for equitable relief and thus is an appeal to judicial discretion which predominates in courts of equity. Beal v. Missouri Pacific R. Co., 1940, 312 U. S. 45, 61 S.Ct. 418, 85 L.Ed. 577. There are factors of this case which demand that, as a court of equity, I exercise my discretion and dismiss the action. I am moved to take this step because of the fact that the plaintiffs contest the constitutionality of a California statute which has not been passed on by the courts of that state.

In order for the plaintiffs to realize their objectives they must upset the 1946 judgment of the state court which determined that the fifteen individual defendants in the instant action were the only persons entitled to membership rights in the Bank. The complaint discloses that the plaintiffs have contemplated two alternative approaches to this objective. In counts three and four they allege that this judgment was procured by fraud. In paragraph XII of the first cause of action, which is incorporated in the other three causes of action by reference, it is alleged that the statute under which this 1946 judgment was procured is in contravention of the federal and state constitutions.

■ The plaintiffs' second theory, that the act under which the 1946 judg-ment was obtained is unconstitutional, causes me some concern. The California Supreme Court has upheld the constitutionality of the statute as it relates to service of process (Bennett v. Hibernia Bank, supra), but that Court has not passed on other grounds of unconstitutionality which the plaintiffs raise in their complaint.[2] One of the precepts of the federal judicial system is to avoid the determination of constitutional questions by giving the courts of the states involved the opportunity to pass on the question. The filing of complaints identical to the one before me in the state court affords the California courts this opportunity. It is customary in such instances to stay the federal proceeding until the state court has made its determination. Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 62 S.Ct. 986, 86 L. Ed. 1355. But that would be an idle act in this case. When the state court complaints are litigated all the matters in controversy now before the federal court can be fully adjudicated and the plea of res judicata could be imposed. Highway Ins. Underwriters v. O'Neal, D.C.La.1950, 92 F.Supp. 423. For this reason I believe that a dismissal of the causes of action and the complaint is the more appropriate procedure. Brillhart v. Excess Ins. Co., 1941, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620.

I also believe that a dismissal of the action is required because of the lack of indispensable parties. During argument plaintiffs' counsel dismissed two of the fifteen individual defendants when the diversity requirements were upset by a showing that they were not residents of California like the other defendants. [28 U.S.C. § 1391(a)].

■ The definition of indispensable parties set forth in Shields v. Barrow, 1854, 17 How. 129, 15 L.Ed. 158 has held up for over one hundred years and is quite appropriate for this case. The

---

**2.** In addition to the allegation that the act violated the due process clause of the federal and state constitutions, the plaintiffs allege that the act is also in violation of the following articles and sections of the California Constitution: Article I, Section 21; Article IV, Section 25, subdivision Third; Article IV, Section 25, subdivision nineteenth; and Article IV, Section 25, subdivision Thirty-third.

Court said that indispensable parties are:

"[P]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest or *leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.*" [Emphasis added.]

Assuming for the sake of discussion only that the plaintiffs in this action were successful in upsetting the 1946 judgment and in imposing a constructive trust on the thirteen defendants who have been served, that could have no effect on the interest of the two persons who are no longer parties to this action, thus leaving the matter in an inequitable and unconscionable state. Further, the confusion could be magnified in the event that the state court came to a different conclusion on the legality of the 1946 judgment.[3]

The defendants contested the plaintiffs' allegation of the jurisdictional amount in the second cause of action. A separate hearing was held to give the plaintiffs an opportunity to show that the amount in controversy was in excess of $3,000. While I feel that there was some merit to the defendants' contention which was not adequately refuted by the plaintiffs' showing, the dismissal on the other grounds makes it unnecessary to come to a determination on this ground.

The complaint and the causes of action therein are dismissed.

[3.] During argument defendants' counsel stipulated that he would appear for all fifteen individual defendants in the state court action.

"Mr. Mash [Counsel for plaintiffs]: There is nothing in writing. You have not agreed to accept service for those defendants. Would you be willing to do that now?

"Mr. Lasky [Counsel for defendants]: I have told Mr. Greer that. I will state it now. We are going to appear and will accept service at any time you want in the State action.

"Mr. Mash: Without objection to jurisdiction over the person?

"Mr. Lasky: Just as if the people were caught right here in court and served right here in court with the summons. I have told Mr. Greer that months ago.

"Mr. Mash: Do you agree to that?

"Mr. Lasky: Oh, yes, I do now, too."