[Civ. No. 3514. Third Appellate District.—May 10, 1928.]

FIRST NATIONAL BANK OF REDONDO (a Corporation), Plaintiff and Respondent, v. STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Defendant and Respondent; J. ATHERTON et al., Defendants and Appellants; CHARLES M. KIRK et al., Intervening Respondents.

Frank Bryant for Appellants.

Frank L. Perry for Plaintiff and Respondent.

Lawler & Degnan for Defendant and Respondent.

M. D. Andrews for Intervening Respondents.

TUTTLE, J., *pro tem.*—This is a suit in equity for declaratory relief, under the provisions of section 1060 of the Code of Civil Procedure. A decree was entered declaring the rights of the parties under the provisions of a certain

lease between them. Certain parties to said lease now prosecute this appeal from the judgment.

The appeal is taken by the so-called "alternative method" and there is no controversy as to the facts, which are all agreed upon in a stipulation filed in the cause.

It appears from the briefs of respondents that on October 26, 1921, a number of land owners in the vicinity of Redondo, entered into a certain lease with Standard Oil Company of California, hereinafter referred to as the "Oil Company." The lands were separately owned, but they formed a compact area of some seventy-five acres. Certain rents and royalties, accruing under this lease, were to be paid by the Oil Company to the First National Bank of Redondo, as depositary. Only two paragraphs of said lease contain matter which give rise to this controversy, and they are:

"12. After the completion of the first or any subsequent well herein provided for, whether oil is found therein in such paying quantities or not, the lessee may, at its election, at any time cease further drilling, and if said full number of wells shall not have been drilled, the lessee shall thereupon surrender the lease and this lease shall thereupon terminate as to all said premises, except ten (10) acres surrounding each producing or drilling well, which the lessee may hold free of further drilling obligations as long as oil or gas is produced therefrom, with rights of way for pipe lines upon all of the herein demised premises, and for passage over and upon and across, and ingress and egress to and from said premises. Such ten (10) acres shall in each instance be in the form of a square or rectangle, the longer sides of which shall not exceed twice the length of the shorter sides. At the expiration of the period of twenty years from the date hereof, no further wells shall be drilled on said premises by said lessee except with the written consent of the lessor owning the parcel of land upon which said well is desired to be drilled."

"37. Said lessors agree to, and they do hereby, pool their interest in this lease, and agree that during the continuance of this lease each owner of land subject thereto shall share in all benefits accruing to the whole lease in the ratio which the acreage owned by said lessors bears to the entire acreage

hereby leased. This provision as to apportionment of benefits to be operative, notwithstanding the surrender by the lessee of any land described herein.''

Pursuant to the provisions of said paragraph 12, the Oil Company duly gave written notice to all the lessors that it elected to cease drilling upon and to surrender all the leased premises except ten acres surrounding each producing well. The area surrendered was owned by respondents. The ten-acre tracts thus retained (surrounding the producing wells) included all the acreage owned by appellants.

Upon the giving of this notice of surrender, appellants served notice upon the depositary bank that no more payments should be made to the respondents, and that they (respondents) should be denied thereafter any participation in the rents and royalties paid by the Oil Company under said lease.

The trial court held that the surrender of a portion of the land covered by said lease, as hereinbefore detailed, had no effect upon the method of distribution of royalties by the bank, or upon the proportions into which said royalties should be divided and did not and could not operate to divest any of the lessors of their interests in royalties and could not and did not change the interests of the parties as lessors under said lease. Judgment was entered accordingly.

We cannot definitely define appellants' position. In one breath they contend that the whole lease was canceled by the Oil Company, while in another they contend apparently that the lease is in full force and effect, but that they are entitled to *all* royalties accruing after the surrender of the acreage mentioned.

By the portion of the lease quoted *supra*, the lessors (appellants and respondents) agree to ''pool their interest in this lease.'' The term ''pool'' means a surrender of certain individual rights and powers for the benefit of all, on the theory that the accruing benefits gained by the joint venture outweigh the individual rights surrendered. (*Burley Tobacco Soc.* v. *Monroe*, 148 Ky. 289 [146 S. W. 725].) In the instant case the parties surrendered their individual rights. If all the revenue was produced by wells entirely upon the lands of any one of them, all would participate, nevertheless, in the proceeds from said wells. It was simply a case of collective bargaining for the common good.

It is contended by appellants that the notice of surrender was a termination of the whole lease. We see no merit in this position. The lease expressly provided that the benefits were to be apportioned as therein stated, *notwithstanding the surrender by the lessee of any land described therein.* The act of the Oil Company in surrendering certain acreage was strictly in accordance with the provisions of the lease, and permission to take this step was not required of appellants, nor did said notice terminate the entire lease. There is no uncertainty or ambiguity in the language of the lease.

Appellants' only authorities are upon rescission and specific performance, but the application of these cases to the questions raised is not clearly explained.

After agreeing in writing to "pool" their interest, appellants, when they find that all the oil is coming from their own lands, now want to exclude their colessors from any of the benefits of the lease. Their contentions border upon the frivolous, in their obvious lack of any real or substantial merit.

The appeal is without any real or substantial merit and the judgment is therefore affirmed.

Hart, Acting P. J., and Plummer, J., concurred.