[Civ. No. 2450. Fourth Appellate District.—October 3, 1939.]

MARY ELIZABETH ANDREWS et al., Appellants, v. W. K. COMPANY (a Corporation) et al., Respondents.

Pease & Dolley for Appellants.

C. Douglas Smith for Respondents.

MARKS, J.—This is an appeal from a judgment entered after a demurrer of the W. K. Company to a second amended complaint had been sustained without leave to amend. The demurrer was both general and special. It is clear from the ruling of the trial judge that it was sustained without leave to amend because, in his opinion, no cause of action was stated against any defendant. The specifications of uncertainty, ambiguity, and unintelligibility in the demurrer are not argued. We therefore assume that they have been abandoned.

The plaintiffs are landowners or have interests in lands in the Huntington Beach oil fields in Orange County. Their controversy is with the W. K. Company, a corporation, which we will hereafter refer to as the defendant. The individual defendants and the other corporate defendants are joined either because they refused to join as parties plaintiff or because their presence was deemed necessary to a complete ad-

judication of the controversy. They have filed no appearances here.

The second amended complaint contains four causes of action. The first is for an accounting. The second is to quiet title to alleged interests in an oil royalty in oil produced from land in Huntington Beach. The third is for declaratory relief. The fourth is for the reformation of an oil and gas lease.

A copy of the oil and gas lease is not attached to the second amended complaint. In each count reference is made to the copy of that document attached to the first amended complaint and by such reference it is attempted to be made a part of the second amended complaint. Attention of counsel is called to 21 California Jurisprudence, page 44, section 24; *People* v. *De La Guerra,* 24 Cal. 73, *Ralphs* v. *Hensler,* 97 Cal. 296, at page 304 [32 Pac. 243], and *Groom* v. *Bangs,* 153 Cal. 456 [96 Pac. 503]. The ruling of the trial court was based on a construction of the language of the oil and gas lease and counsel's principal arguments are made on that issue. We therefore find it advisable to construe certain provisions of the oil lease in order to decide the questions argued in the briefs.

 The first cause of action alleges the representative characters of certain of the plaintiffs, the existence of certain partnerships, and of the corporations plaintiff and defendant and the reasons why various defendants are joined. It also alleges interests of certain plaintiffs, not the original lessors, in the subject-matter of the action. These allegations are formal and sufficient and need no further mention.

On August 10, 1920, Thomas E. Ashton and Edna P. Ashton, Carl H. Hankey and Adele A. Hankey, Martin McQuiney Schenck and Sadie Alida Schenck, Arthur Prouse and Martha Prouse, G. Wellner and Marie E. Wellner, James J. Conrad and Gussie Conrad, and Claude D. Crowell were the respective owners of described parcels of land in the Huntington Beach oil fields. They entered into a community oil and gas lease with Louis A. Copeland as lessee. The lessors, and successors to certain of their interests, except Arthur Prouse and Martha Prouse, his wife, are still the owners of those parcels of land. The W. K. Company has succeeded to the interests of Arthur and Martha Prouse in their described parcel of land and in and to their interests in the community oil lease which is still in full force and effect.

Several oil wells have been drilled on the leased land and are now producing oil and gas.

Under the terms of the community oil lease the owner or owners of each parcel of the leased land acquired an interest in, and the right to receive a proportionate share of the one-sixth landowners royalty reserved by the lease to the land-owners, from all the wells drilled on any part of the leased premises without regard to the ownership of the particular parcel of land upon which any well might have been drilled. For many years each landowner (or his successor in interest) so shared proportionately in such landowners' royalty from each and all of the producing oil wells operated by defendant.

Since about the month of March, 1936, oil and gas have been produced and are still being produced by defendant from the property formerly owned by lessors Arthur and Martha Prouse whose interests have been succeeded to by defendant. Demand has been made on defendant for an accounting of plaintiffs' shares of the production of oil and gas from the Prouse property but defendant has refused and still does re-fuse to so account to plaintiffs or to pay them any portion of the royalty on such production.

While many of the allegations of this cause of action could be made much more definite and certain it is rather clear that it states a cause of action for an accounting as it appears that a relationship exists which requires an accounting and that there is something due to plaintiffs from defendant. (See *Brea* v. *McGlasham*, 3 Cal. App. (2d) 454 [39 Pac. (2d) 877].)

All of the allegations of the first cause of action are in-corporated by reference in the other causes of action.

■ After incorporating the allegations of the first cause of action in the second, the second count alleges that plain-tiffs claim an interest in, and the right to receive, their pro-portionate share of the landowners' one-sixth royalty of oil and gas produced from defendant's land; that defendant denies these claims and at the same time claims an interest in the landowners' one-sixth royalty in all the other land described in the community lease. Taken by itself this allega-tion is defective as it alleges the claims of plaintiffs and not that they are the owners of their proportionate shares of the one-sixth landowners' royalty in the oil and gas produced from defendant's property However, plaintiffs' titles and

sources of titles are set forth in the first cause of action, the allegations of which are incorporated in the second, which saves this portion of the pleading from being entirely defective. While it is badly in need of amendment we cannot say that it does not and could not be made to allege a good and sufficient cause of action to quiet plaintiffs' titles to their claimed interest in the landowners' royalty in the oil and gas produced from defendant's property.

■ The third cause of action states the controversy that has arisen between plaintiffs and defendant over the division of the landowners' royalty from oil and gas produced from defendant's land; that this is an actual *bona fide* controversy between the parties as to their existing rights and duties under the community lease. These allegations are sufficient to invoke the equity jurisdiction of the courts in an action for declaratory relief. (Sec. 1060, Code Civ. Proc.; *Pacific States Corp.* v. *Pan American Bank of California,* 210 Cal. 472 [292 Pac. 494]; *Pacific States Corp.* v. *Pan American Bank of California,* 213 Cal. 58 [1 Pac. (2d) 4, 981]; *Tolle* v. *Struve,* 124 Cal. App. 263 [12 Pac. (2d) 61]; *California C. P. Growers* v. *Corcoran,* 14 Cal. App. (2d) 264 [57 Pac. (2d) 1360]; *Rolapp* v. *Federal Bldg. etc. Assn.,* 11 Cal. App. (2d) 337 [53 Pac. (2d) 974].)

We need devote little attention to the fourth cause of action to reform the community lease because of mutual mistake. From our study of the lease we do not believe any great necessity for reformation appears, as the true intent of the parties is quite easily ascertained from the lease in its present form. However, as the judgment must be reversed with directions to grant plaintiffs a reasonable time within which to amend their pleading we see no serious objection to permitting them to amend their fourth cause of action if they be so advised.

■ The lease in question is a rather awkward form of a community oil and gas lease whereby the landowners leased to the lessee the described property for the exploration for and removal of oil, gas and other kindred substances for a term of twenty years and as long thereafter as those substances be produced in paying quantities, with a one-sixth royalty to be paid to the lessors.

We find the following pertinent provisions in the lease:

"Lessee may surrender this lease before or after the commencement of drilling, without liability for failure to commence or continue operations; but upon such surrender Lessee shall execute to Lessors and record a quit-claim deed to said premises. Cancellation and termination of lease shall be the only remedy for failure to commence and/or continue operations. . . .

"The Lessee shall have the right at any time to retain any producing well or wells, together with four acres surrounding each such well in the form of a square subject to the provisions of this lease, upon surrendering the remainder of such land and executing and recording to Lessors a quit-claim deed for the surrendered land. The Lessors will not drill upon surrendered land within two hundred fifty (250) feet of any producing well retained by Lessee. . . .

"It is further agreed between the Lessors herein and between the parties hereto that all rents and royalties due and payable hereunder shall be pro-rated and paid by said Lessee to said Lessors in proportion as their respective acreage holdings as herein stated bear to the total or aggregate area hereby leased. In event of quitclaiming any portion of the land hereby leased the owner or owners of said lands so quit-claimed shall retain his or their proportionate share of all royalties payable hereunder."

We believe the lease before us comes squarely within the rule announced by this court in *Clark et al.* v. *Elsinore Oil Co.*, 138 Cal. App. 6 [31 Pac. (2d) 476], where the land belonging to the plaintiffs had been quitclaimed to them. It was there said:

"The decision in *Higgins* v. *California P. & A. Co., supra* (109 Cal. 304 [41 Pac. 1087]), is authority for the proposition that where the owners of distinct contiguous parcels of land enter into a joint lease of their properties such lease is valid, that the reservation of a specified monthly royalty for each ton of bituminous rock and liquid asphaltum that may be mined or removed from the leased premises as rent for such premises is unobjectionable and that although the agreement of lease contained no language providing for equal division of the royalty the terms of the lease warranted the presumption that each lessor was to receive one-half of such royalty, which presumption was in perfect accord with the practical construction of the lease by the parties thereto.

"From the above recital it is apparent that if the lease agreement made by respondents and appellant on May 3, 1929, had contained no clause providing for equal division of whatever royalties might be received the above-cited case would, under the terms of said lease, have been authority for the proposition that the lessors were entitled to an equal division of such royalty. However, since the parties to the lease contract which is here considered chose to render it certain that there was to be an equal division of whatever royalties might be received we fail to grasp the force of appellant's argument that no consideration should be given to this very plain provision. On the contrary, it would seem that the provision is of considerable importance and that we are not warranted in disregarding it. We entertain the opinion that the provision sheds light on the intention of the parties and particularly on the intention of the lessors and points to the fact that respondents and appellant intended to pool their holdings to the end that one or more oil-producing wells might be developed on their joint properties and that no matter at what location or on whose land such well or wells might be drilled whatever profit might result therefrom should be divided equally between appellant on the one hand and respondents on the other.

"Since this was undoubtedly the intention of the lessors, it is entirely reasonable to presume that they intended that this equal division of any royalties that might be received should continue in the event that the lessee should surrender any portion of the demised premises covered by the joint lease. . . . The fact that the lessee had elected to drill a well on that portion of the demised premises owned by appellant detracts nothing from the right of respondents to receive their proper share of the royalty. The terms of the lease agreement made the royalty payable to the lessors, not to the particular lessor on whose land a producing well might be drilled. When the lease contract was made the lessee had the right to drill a well on any portion of the demised premises and except for its surrender of seven-eighths of such premises would not only have had the right, but would have been obligated to drill seven additional wells. The royalty of one-eighth of the net proceeds derived from any producing well or wells is simply a convenient and customary mode of estimating the rent to be paid for the exclusive occupation of the whole premises

and the right to drill for oil at any place on such premises during the term of the lease.''

The terms of the lease before us supports the contentions of plaintiffs much more strongly than the lease in the Clark case. That lease contained no provision, as does the lease here; that on the quitclaim of a portion of the leased land the owners of the quitclaimed land should continue to receive their proportion of the royalties from the land not quitclaimed. This clearly shows an intention on the part of the owners to create in each an interest in the royalties from all the leased property. This conclusion is strengthened by the terms of the lease providing for a quitclaim of all or any portion of the leased property. The quitclaim is to be made to the ''lessors'' as a body and not to an individual owner of a quitclaimed parcel of land. It is also provided that the ''lessors'' not the owner of a quitclaimed tract, shall not drill a well on the quitclaimed land within two hundred fifty feet of a well retained by the lessee. These provisions disclose a clear intention on the part of the lessors to retain at least an interest in all of the royalties from oil and gas produced on any portion of the leased property. (*First Nat. Bank* v. *Standard Oil Co.*, 91 Cal. App. 705 [267 Pac. 548]; *Jones* v. *Pier,* 124 Cal. App. 444 [12 Pac. (2d) 646].) (See, also, *Pimentel* v. *Hall-Baker Co.*, 32 Cal. App. (2d) 697 [90 Pac. (2d) 588].) Such interest is a vested interest in the respective landowners, or their, or any of their successors, and will so remain vested at least as long as hydrocarbons are produced in paying quantities from the leased properties during the life of the present lease. What may happen to those interests after that time need not be considered here. Such a vested interest cannot be divested by the act of one party without the consent of the other parties.

There is nothing in *Higgins* v. *California Petroleum etc. Co.*, 122 Cal. 373 [55 Pac. 155], that conflicts with any of the conclusions we have reached.

The judgment is reversed with directions to the trial court to grant plaintiffs a reasonable time within which to amend their second amended complaint.

Barnard, P. J., and Griffin, J., concurred.