[L. A. Nos. 23328, 23329. In Bank. May 17, 1955.]

BUDGET FINANCE PLAN (a Corporation), Appellant, v. SAV-ON FOOD CLUB, INC. (a Corporation), Respondent.

(Two Cases.)

Mario L. Clinco and Edgar J. Melchione for Appellant.

J. George Bragin for Respondent.

SCHAUER, J.—Plaintiff, the assignee of contracts of conditional sale, brought these two actions for money against the assignor-seller, herein called defendant. The actions were tried together. In the first action, referred to by the parties as the "with recourse assignment" case, the parties stipulated that plaintiff have judgment in specified sums on the first and second causes of action and that the sums due on the third and fourth causes of action had been paid in full; plaintiff appeals from the portion of the judgment which decrees that it take nothing on its fifth cause of action. In the second action, referred to by the parties as the "without recourse assignment" case, plaintiff appeals from the judgment that it take nothing. The two appeals do not present common questions of law and, hence, will be separately discussed. We have concluded that the portion of the judgment appealed from in the first case and the judgment in the second case should be reversed with directions to the trial court to enter judgments as hereinafter indicated.

## "With Recourse Assignment" Case

Defendant sold a freezer under a conditional sale contract which provided for payment of the price in monthly installments. Defendant assigned all its rights under the contract to plaintiff by an assignment which provided as follows:

Defendant guarantees full performance of the contract. Defendant agrees "that in the event of non-compliance with any of the conditions of said agreement, whether or not repossession has been made or undertaken, suit may be brought by the holder [plaintiff] against [defendant] . . ., whether or not suit has been commenced against the party or parties to said Agreement and without waiving any rights as to time of repossession." Defendant agrees "that in the event of repossession or default by the Purchaser, the entire balance outstanding under said agreement shall become immediately due and payable."

The conditional buyer defaulted. Plaintiff brought this action to recover from defendant the unpaid balance under the contract. After plaintiff instituted this action, it repossessed the freezer without notifying defendant. So far as appears the freezer is still in the possession of plaintiff.

 The trial court accepted defendant's contention that by repossessing the freezer without notice to defendant plaintiff elected to waive its other rights against defendant. The express terms of the agreement between plaintiff and defendant negative the tenability of such holding. By the agreement defendant not only assigned to plaintiff its rights against the conditional buyer;[1] it also agreed that should the buyer default plaintiff should have certain rights against defendant. It is agreed that in the event of default by the buyer suit may be brought against defendant "whether or not repossession has been made or undertaken," and "whether or not suit has been commenced against" the buyer, and "without waiving any rights as to time of repossession." The purpose and effect of these provisions is to permit plaintiff to pursue its remedy of suit against defendant, whatever plaintiff may do as to its remedies against the buyer. This is not to say, and plaintiff does not claim, that it can have

---

[1] These rights, as stated in the conditional sale contract, include the right, in the event of default by the buyer, to repossess the property with "the option: (a) To retain all payments previously made by buyer as compensation for the use of said property, and, to declare all interests of the buyer therein terminated, or (b) To sell said chattels . . . and credit the net proceeds of said sale . . . on account of the amounts due hereunder."

double recovery, but only that its pursuit of a remedy against the buyer under the conditional sale contract, at a time while the present action was pending, does not preclude it from continuing to prosecute this action against the defendant pursuant to the express terms of the assignment-agreement.

Defendant relies upon the asserted general rule that repossession and suit for the price under a conditional sale contract are mutually exclusive remedies and that pursuit of one is a waiver of the other. We are not here concerned with what remedies under the conditional sale contract may be available against the buyer. ■ We may say, however, that it is not, as defendant urges, a rule of universal and automatic application under every conditional sale contract that when the seller brings suit for the purchase price he passes title to the buyer and cannot thereafter repossess, and when the seller repossesses he terminates the contract and cannot thereafter sue for the price. The terms of the contract and the other circumstances of the case, not a mechanical rule as to election of remedies, are determinative. (See *Ravizza* v. *Budd & Quinn, Inc.* (1942), 19 Cal.2d 289, 293 [120 P.2d 865]; *Adams* v. *Anthony* (1918), 178 Cal. 158, 160 [172 P. 593] ["In suing on the notes, while still retaining possession of the automobile, the defendant was merely exercising rights, which, under the agreement, were concurrent and not alternative"]; *American-La France Fire Engine Co.* v. *Bagge* (1929), 98 Cal.App. 292, 295 [276 P. 1066] [by the contract "the seller explicitly limited its right, in the event of a failure to receive payment . . ., to repossess itself of the property"]; *James* v. *Allen* (1937), 23 Cal.App.2d 205, 207 [72 P.2d 570] ["the contract in this case limits the vendor to his election between two remedies"].) Similarly here it is the contract between plaintiff and defendant (which is more than a mere assignment) which must be looked to in deciding the remedies which plaintiff can pursue against defendant.

■ Defendant relies upon section 2819 of the Civil Code, which provides, "A surety is exonerated . . . if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." Defendant says that plaintiff, as creditor, by repossessing the freezer without notice to defendant, impaired the value of

the security for the debt, and that if plaintiff had notified defendant, defendant could have required plaintiff creditor to proceed against the principal and would have been exonerated had plaintiff failed to do so (citing Civ. Code, § 2845),[2] or defendant could have paid plaintiff and demanded possession of the security and sold it to indemnify itself (citing Civ. Code, § 2849).[3]

Defendant's attempted application of rules as to suretyship is not relevant. Again it must be said that the terms of the contract between plaintiff and defendant, not abstract rules of law, determine whether plaintiff can proceed as it has done. Under the contract defendant is not a surety, whose liability depends upon the liability of the principal debtor; defendant has agreed that on default of the buyer suit may be brought against it independently of whether plaintiff brings action against the buyer and independently of whether plaintiff repossesses the freezer; defendant's liability on this contract is direct.

At the outset of the trial counsel for defendant stated, "With respect to the fifth cause of action,. . . these defendants will stipulate . . . that there presently is due and owing as the unpaid balance of said contract, $641.55" and that if the trial court determines that defendant is incorrect in its contention that plaintiff cannot recover because it took possession of the freezer "we are willing that your Honor should render a judgment against the defendant in this amount, $641.55." Plaintiff urges that this court should reverse the judgment for defendant on the fifth cause of action with directions to the trial court to enter judgment for plaintiff in the agreed amount. Since, on the record, a judgment for plaintiff in such amount is the only correct one which could be rendered, we can and should direct its entry.

### "Without Recourse Assignment" Case

Defendant seller assigned to plaintiff contracts of conditional sale of freezers which provided, among other things,

---

[2]Section 2845 provides, "A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety can not himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

[3]Section 2849 provides, "A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a co-surety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not."

that "The undersigned [buyer] . . . agrees to pay therefor" a down payment and installments. The agreements of assignment provide, "This Assignment is made without recourse in consideration of the following warranties: . . . That the initial payment shown by the said Agreement [of conditional sale] has been actually received by the undersigned [defendant] . . ."; in the event of breach of warranty "the waiver of recourse . . . shall be void and the terms of the 'with recourse' assignment" quoted *ante*, p. 567, shall apply.

Before defendant made the assignments it had received the amount of the down payment specified in each conditional sale contract from the salesman who obtained such contract. Each of the buyers defaulted after making none or only one of the specified monthly payments. Plaintiff sued for the balance remaining unpaid. It alleged that the warranties "that the initial payment . . . has been actually received" were not true in that defendant "did not receive the down payment as specified and set out in the conditional sales contract."

Defendant's books contain entries crediting the down payments as made and we assume, in favor of defendant, that payments in such amounts were actually delivered to defendant by the salesmen. But the evidence establishes without contradiction that such payments were not made by the buyers under the contracts; the payments were merely reported by defendant's salesmen, who obtained such contracts, as being made. The salesmen were entitled to commissions greater than the amounts of the down payments; they filled in the contracts to indicate that the down payments had been made and told the buyers to repay them (the salesmen) at the buyers' convenience.[4]

---

[4]One of the buyers testified that the salesman said that "that down payment was his commission and he had to put it down there so that the finance company would accept it as payment down on the account." Another buyer testified that the salesman said that "it had to be written in there so that the loan company would take it and that I could pay him whenever I had the money to pay him." And another buyer testified that when she told the salesman, "We don't have the down payment now," he replied, "you can pay me the down payment whenever you can and I will fill this in as though you had paid me so they will take the contract."

In oral argument defendant's counsel asserted that "There is a dispute as to who made those payments, and the record will reveal that"; that "there was substantial evidence to support the Court's finding" in the "without recourse" case that the following allegation of the complaint is untrue: "That the warranty made by the defendants was untrue in that they did not receive the down payment as specified and set out in the conditional sales contract." But, questioned further as

These arrangements by the salesmen resulted in a situation forbidden by Regulation W issued by the Board of Governors of the Federal Reserve System under its authority to exercise consumer credit controls.[5]

It is plaintiff's position that the sense of the warranties "That the initial payment . . . has been actually received" is that such payments had been made by the buyers. The trial court took the position that "it makes no difference" whether the down payment came in the form of personal credit from the salesmen and cash advanced by them or cash from the buyers.

In ordinary parlance one understands, when a seller says that he has received a payment agreed to be made by a buyer, that he has received it from the buyer, not that it has been advanced by the seller's own salesman. Particularly does one so understand when a federal credit regulation in effect forbids the seller to accept a payment which he knows has been advanced by the salesman. Therefore, the trial court erred in its determination that the seller did not

to whether there was any evidence contradicting the testimony of the buyers that the down payments were not made by them, defendant's counsel stated, "as I recall, the only testimony on that point was that the buyers had stated they had not made the payments. Then there was testimony on behalf of respondents [defendant] that payments were made, books and ledgers were submitted in evidence and testimony was given on that point. Now it appears to me that there was a substantial conflict in that regard."

We cannot agree with defendant's counsel that any inference "to support the Court's finding" can be drawn from the evidence last mentioned (which in substance is that defendant's books and the contracts showed entries of credits to the purported buyers in the amounts of the down payments, not the identity of persons by whom those amounts were paid). The "testimony on behalf of respondents that payments were made" and the "books and ledgers . . . submitted in evidence" do not contradict the testimony of the buyers, the only witnesses at the trial who knew whether they had made the down payments.

[5]Regulation W (Title 32A, Code of Federal Regulations, rev. 1951, ch. XV, pp. 2364-2373) provided in pertinent part that on installment sales of freezers there should be a minimum down payment of 15 per cent of the cash price (§ 9); that "No credit complies with the requirements of this regulation if at the time the obligation arises there is any agreement, arrangement, or understanding . . . by which there is to be any evasion or circumvention, or any concealment of any evasion or circumvention, of any requirement of this regulation" (§ 6 (h)); and that the seller "shall not extend any credit for financing the purchase . . . if he knows or has reason to know that there is . . . any other credit of any kind extended in connection with the purchase . . . which would bring the total amount of credit extended in connection with such purchase beyond the amount of instalment credit permitted by this regulation" (§ 6 (i)).

warrant that it had received the down payments from the buyers. Because of the breach of warranty the terms of the "with recourse" assignment became applicable, and plaintiff can recover from defendant the amount of the price which remains unpaid.

In the second action plaintiff introduced evidence as to only three of the five causes of action which it alleged. It asks that the judgment as to those three causes of action be reversed "with instructions to the trial court to enter judgments therein as prayed for." This request is apparently inadvertent, for plaintiff's own evidence shows that the amounts remaining unpaid are less than the amounts prayed for. According to the testimony of defendant's manager, called as a witness by plaintiff, the amount due under the first cause of action was $615.53, under the second cause of action $371.66, and under the fifth cause of action $580.75. The evidence as to the amounts due is not disputed.

For the reasons above stated the portion of the judgment appealed from in the first action (L. A. Superior Court No. 597248) is reversed with directions to the trial court to make appropriate findings of fact and conclusions of law and to enter judgment for plaintiff on its fifth cause of action in the principal amount of $641.55, together with reasonable attorneys' fees in an amount to be fixed by it, together also with interest at the legal rate from the date of judgment until paid;[6] the judgment in the second action (L. A. Superior Court No. 597249) is reversed with directions to the trial court to make appropriate findings of fact and conclusions of law and to enter judgment for plaintiff in the principal amount of $615.53 on the first cause of action, $371.66 on the second cause of action, and $580.75 on the fifth cause of action, together with attorneys' fees as to each count in a reasonable amount to be fixed by it, together also with interest at the legal rate from the date of judgment

[6]Plaintiff has not asked for interest on the amounts due and makes no showing of the time when they became due and payable. Where there is no express contract covering the matter, the law awards interest on money from the time it becomes due and payable if such time is certain or can be made certain by calculation (Civ. Code, §§ 3287, 3302; *Pitzer* v. *Wedel* (1946), 73 Cal.App.2d 86, 92-93 [165 P.2d 971]; 14 Cal.Jur., Interest, § 5, p. 678). In the absence of a showing as to such time, and in the absence of a demand for interest, there is no occasion to award it. The Constitution and statutes, however, provide for the automatic inclusion of interest from the date of judgment. (Cal. Const., art. XX, § 22 (No. 2); Code Civ. Proc., §§ 682, 1033.)

until paid,[7] and that plaintiff take nothing by its third and fourth causes of action.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J., Concurring and Dissenting.—I concur in the reversal of the judgment in the first action (L. A. Superior Court, No. 597248), but I disagree with the views expressed by the majority with respect to the second action (L. A. Superior Court, No. 597249). In the latter action the majority reverses the judgment of the trial court and directs judgment for plaintiff on the ground that the evidence shows without conflict that the buyers under the contracts did not make the down payment and hence the warranty that the down payment had been received by the seller was breached and the assignment became one with recourse. To reach that conclusion the majority relies on the testimony of the buyers that they made no down payment—that the seller's salesman made them for them. It is true the buyers' testimony was uncontradicted by other *testimony* but there is other evidence that the buyers made the down payments. The contracts, signed by the buyers and seller, state that the down payment had been made by the buyers. The seller's books show that the payments were made and it may be inferred that they were made by the buyers for the reason that the buyers were the ones who were to make them. This evidence is amplified by the presumptions that "private transactions have been fair and regular"; "that the ordinary course of business has been followed"; and that things have happened according to the ordinary course of nature and the ordinary habits of life. (Code Civ. Proc., § 1963, subds. 19, 20, 28.) Moreover, there is sufficient from the foregoing for the trial court to have disbelieved the buyers' testimony. There is, therefore, a substantial conflict in the evidence and the finding of the trial court should not be upset nor should this court decide that factual issue as a matter of law by directing the entry of judgments.

In addition to the foregoing, plaintiff's assignee's complaint contains the allegation that "By the terms and conditions of said contract, it was provided that the balance to be paid thereon was the sum of $757.62 after deducting a

[7] See note 6, page 572.

cash payment of $111.03 made by said" buyers. This is clearly susceptible of the construction that plaintiff admitted the buyers made the down payment.

For the foregoing reasons I would affirm the judgment for defendant in the second action.