325 P.2d 284

Mary C. WARREN, Plaintiff-Appellant,

v.

William SPURCK and Vada Spurck, his wife, Defendants-Appellees.

No. 6356.

Supreme Court of New Mexico.

April 30, 1958.

Rehearing Denied May 29, 1958.

Milford D. Estill, Artesia, H. J. Rucker, Garland Casebier, Midland, Tex., for appellant.

Hervey, Dow & Hinkle, W. E. Bondurant, Jr., Roswell, for appellees.

SADLER, Justice.

The plaintiff below as an appellant in this Court complains of a judgment in the district court of Chaves County dismissing with prejudice her suit to cancel a conveyance by her and a deceased husband to the appellee-defendant of mineral interests in certain lands procured, as plaintiff charges, by alleged fraudulent representations, and quieting title in defendant as a cross-complainant to said mineral interest as against any claim on plaintiff's part.

After trial on issues framed by the parties, the court rendered its decision embracing findings of fact and conclusions of law, the substance of which will be stated hereinafter.

On September 15, 1946, the defendants, William Spurck and his wife, Vada Spurck, as joint tenants, owned State of New Mexico Oil and Gas Lease B–8313, dated September 11, 1939, as to the NW¼SE¼, Section 14, Twp. 13 S., Rge. 31 E., N.M.P.M., and State Oil and Gas Lease B–10418, dated July 6, 1943, as to SE¼SE¼ of said Section 14. Likewise, Frank M. Warren and his wife, Mary C. Warren, as joint tenants owned State Oil and Gas Lease B–10313, dated May 11, 1943, as to the NE¼SE¼ of said Section 14.

On September 16, 1946, said Spurcks and Warrens agreed to sell their said three respective tracts to Dale Resler for $12,000 cash and an overriding royalty of 7½ per cent., and a payment of $3,000 payable out of the ⅛th of the production. Pursuant to said agreement, on September 17, 1946, said three 40-acre tracts were conveyed to Resler by three separate assignments. On October 16, 1946, Dale Resler and his wife, Nona Resler, executed and delivered an assignment of overriding royalty and production payment to William and Vada Spurck, as joint tenants, and Frank M. Warren and Mary C. Warren, as joint tenants.

Frank M. Warren died in 1951 and the plaintiff, Mary C. Warren, is the surviving joint tenant. Thereafter, on March 3, 1953, upon demand of the plaintiff, Mary C. Warren, Dale Resler and wife reassigned said NE¼SE¼, Section 14, to the Warrens, pursuant to the reassignment clause stated in said assignment of overriding royalty dated October 16, 1946. By virtue of nonproduction said State Lease B–10313 expired at the end of its ten-year term on May 11, 1953, and Mrs. Warren made no effort to purchase a new lease on the land embraced therein.

There was no production of oil and gas on any of the 120 acres involved herein

from March 3, 1953, to May 11, 1953. However, on said dates the NW¼SE¼, Section 14, under said leases B–8313 and B–10418, which had been sold by the Spurcks to Resler were validated by production from other lands in the respective leases. A producing well was completed on the SE¼SE¼, Section 14, later that year. So much for the history of the transaction out of which this suit originated.

We turn now to the findings made by the Court on the issue of fraud. Mary C. Warren was inexperienced in the oil business and in business transactions generally, whereas defendant, Spurck, was an experienced oil operator and had had considerable experience in connection with New Mexico property since 1926.

The reassignment of the lease to Mrs. Warren was made approximately 69 days prior to its expiration date. By a letter dated May 10, 1955, from attorney, Rucker, representing the operators, defendant, Spurck, was informed that production had been obtained on one of the tracts and inquired whether or not the oil payment in favor of himself and Frank M. Warren and their respective wives had been paid. A few days later, on the 13th day of May, 1955, defendant, Spurck, visited the home of plaintiff, Warren, for the purpose of securing an instrument conveying her interest in said property to him.

On the occasion of his visit, defendant, Spurck, did not disclose to plaintiff that production had been obtained on the leases formerly owned by Spurck. He did represent to plaintiff, Warren, that there was "a little cloud" on one of his titles. The plaintiff was a widow, age 69, at the time of the execution of the instrument and suffered from high blood pressure and diabetes, had been ill in bed and so advised the defendant when he called for an appointment. Indeed, defendant, Spurck, was advised by plaintiff's sister, the day preceding his visit, that the plaintiff was under a doctor's care.

At the time defendant, Spurck, visited the home of plaintiff, the latter was not aware that production had been obtained on the New Mexico leases. The defendant, Spurck, gave plaintiff, Warren, a check in the amount of $300 as consideration for the assignment from Mary C. Warren to him covering the Warren overriding royalty and oil payment, which sum was entirely inadequate, if plaintiff in truth and in fact still had any interest in such royalty and oil payment.

During his lifetime, Mr. Warren, on several occasions, had dealt with William Spurck in connection with various property transactions, which fact was known to Mary Warren, the plaintiff in the cause. Mr. Warren had expressed to Mary Warren from time to time his confidence and trust in the integrity and judgment of William Spurck; and subsequent to the death of Mr. Warren, the plaintiff, Mary Warren, relied upon the defendant, Spurck, under

the same feeling of confidence in his integrity and business ability, and as an advisor, as had her husband; and she had from time to time contacted the defendant, Spurck, with reference to her interest in property.

In calling upon the plaintiff, Mary Warren, at the time of her illness, in her home, under the circumstances, the defendant, Spurck, took improper advantage of this trust and confidence that plaintiff had placed in him and plaintiff, Mary Warren, relied upon the representation of the defendant, Spurck, that her claim constituted only a cloud on one of his titles and that she had no interest in or to any of the royalty or oil payment due under the original assignment from the Warrens and Spurcks to Mr. Resler.

Plaintiff relied upon the representations of the defendant, Spurck, and suffered injury thereby; she would not have executed the assignment to Mr. Spurck but for his representation and but for the failure on his part to advise plaintiff at the time he obtained the assignment from her, that there was production on one of the 40-acre tracts which had originally been assigned to Mr. Resler. If the defendant, Spurck, had revealed to the plaintiff the fact that there was production on one of the 40-acre tracts remaining under lease she would not have executed the assignment to the defendant, Spurck.

Having found the forgoing facts the court deduced therefrom certain conclusions of law which follow next. One of them was in the form of a declaration that the conveyance by the Warrens and Spurcks to Resler and the conveyance of the oil payment and overriding royalty to the Warrens and Spurcks by Resler did not bring about a pooling of the ownership in the respective 40-acre tracts owned by the said Warrens and Spurcks.

The court further concluded that at the time of the discussion and purported delivery of the assignment from Mrs. Warren to Spurck, to-wit, on May 13, 1955, Mary C. Warren by virtue of the reassignment to her from Resler had been divested of all her right, title and interest in and to the overriding royalty and oil payment described in said assignment; and that the otherwise fraudulent concealment on the part of the defendant, Spurck, in connection with the assignment from Mrs. Warren to Spurck was immaterial in so far as this case is concerned, and that the relief requested by the plaintiff should be denied.

The plaintiff as an appellant before us complains bitterly of the trial court's ruling that there was here no pooling whereby she enjoys a royalty on or in the two 40-acre Spurck tracts, even though the acreage she contributed to any pooling that occurred, at her request, had been withdrawn. Counsel

for the plaintiff have cited two Texas cases as illustrative of what they are pleased to denominate involuntary pooling. They are Parker v. Parker, Tex.Civ.App., 144 S.W. 2d 303, and French v. George, Tex.Civ. App., 159 S.W.2d 566. The cases cited were discussed with approval by the Supreme Court of Texas in the later case of Southland Royalty Company v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914. Counsel also cite Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43, as illustrative of what they conceive to be voluntary pooling.

Having cited these cases counsel for plaintiff virtually agree the present facts do not fit into any of the well recognized categories of "pooling." They assert, however, and, nevertheless, that we have a series of assignments of State leases which starts 'with the assignment from Warren to Spurck of the Warren 40-acre lease and the assignment by the Spurcks with the two Spurck 40-acre leases to Resler. Then, in logical sequence comes the assignment by Resler to the Spurcks and Warrens of an overriding royalty of 2½ per cent. and $1,-000 payment to the Warrens and a 5 per cent. overriding royalty and $2,000 oil payment in favor of the Spurcks, both overrides and oil payments payable out of the three leases assigned by Spurck to Resler.

Counsel then pose the question whether this transaction, or these separate transactions, did not result in, or amount to, a pooling of the interests of the Warrens and Spurcks. After asking the question counsel forthwith furnish a resounding and unequivocal answer in the affirmative. They cite and throughout, in the main, rely upon the California case of Clark v. Elsinore Oil Company, 138 Cal.App. 6, 31 P.2d 476, after saying it is the case nearest in point coming to their attention. They assert that the California court would undoubtedly have granted a recovery on the present facts. This claim of plaintiff is vigorously challenged by counsel for defendant. They admit there was a reassignment clause in the lease in the Clark case but point out, contrary to the claim of plaintiff, that Resler had no *mere option* to reassign, but was under an absolute duty to reassign, if the lease should terminate or forfeit for any reason, and that Mrs. Warren actively demanded the reassignment to her with which demand Resler complied. Counsel say:

"We believe that the benefits which Mrs. Warren received upon her reassignment of the entire leasehold title to her tract was full compensation and was in lieu of the benefits which the Clark case might give her by holding that she could own both her tract and also continue to benefit in the Spurck tracts. * * *."

Concerning this case, Hoffman in his recent (1954) work on Voluntary Pooling

and Unitization, pages 67 to 68, has this to say:

"It seems apparent that the court in the Clark case might just as logically—and perhaps more logically—have reached the opposite conclusion. If A and B each contribute a tract to a community lease and the lessee subsequently surrenders the lease as to B's tract, it would seem that, since B's contribution to the lease has ceased, his participation in benefits accruing under the lease should likewise cease. His sole basis for participation in such benefits in the first instance is the presence of his acreage in the lease and the removal of this acreage from the lease market—with his acreage released and freed from the binding effects of the lease the basis for participation disappears. The effect of the surrender of B's tract should be essentially the same as if his tract had not been included in the lease in the first instance. Similarly, should B's tract be surrendered only in part his participation in royalties should be reduced in the same proportion, just as if the portion of the tract surrendered had not been included in the lease in the first instance. In any event, it does not follow as a matter of inexorable logic that because A and B initially indicate their intention to pool their tracts in a community lease, without more, they necessarily indicate their further intention to maintain their original sharing status even after one of the tracts has been freed from the lease, in whole or in part, by the act of the lessee in exercising a privilege granted him by the lease. Where the lessors have not expressly agreed upon the effect of a surrender of part of the community lease, as they failed to do in the Clark case, it would seem the better reasoning, in view of the necessity for some rule of law in the matter, to presume that they intend for the pooling and sharing to cease to the extent of any acreage surrendered by the lessee. If the lessors desire a contrary result they can expressly provide for it, as was done in the Bank of Redondo case [First Nat. Bank of Redondo v. Standard Oil Co. of California] (91 Cal. App. 705, 267 P. 548). To presume otherwise, in the absence of an express provision, is to unnecessarily promote the instability of royalty titles and to greatly increase the problems of tracing ownership—practical problems the existence of which is not justified by the result attained in the reasoning of the Clark case—and at the same time to strain the logic of the situation."

We think the most that can be claimed for the several transactions, assignments and reassignments, out of which the suit

grows is that so long as there was no surrender of any of the three 40-acre tracts a conditional pooling might with some logic be implied. Beyond that point we do not think the court could with any propriety go. But to hold the plaintiff could ask for and receive a withdrawal of her acreage from the joint venture, place it in a status for further leasing and development under which she would be sole beneficiary of any production, and at the same time hold on to a royalty interest under lands of her neighbors, makes no appeal to one's sense of fairness or equity.

We think the trial court reached a correct result in holding that after surrender of the lease as to her 40-acre tract that there was no further pooling of royalties, if any had occurred. In so far as it has any bearing on the case, our decision in Raley v. Moore, 60 N.M. 200, 289 P.2d 957, supports the conclusion we have reached. The assignment of override royalty and oil payment to the Spurcks and Warrens itself provided for a reassignment of the acreage under certain conditions and it was pursuant thereto that Mrs. Warren secured a surrender of her 40-acres from Resler. This clause in the contract provided:

"It is further understood and agreed, that if the Assignees or their Assigns should elect to forfeit said Lease or be subject to a forfeiture of title for the non-payment of rental or royalty due to the State of New Mexico, or *for any other reason the titles should be subject to revert back to the State* of New Mexico, in which event the Assignees or their Assigns *shall execute* an Assignment of titles back to William Spurck and Vada Spurck, his wife, as Joint Tenants, to the first Eighty (80) Acres hereinabove described, and to Frank M. Warren and Mary C. Warren, his wife, as joint tenants, assignment to the last forty (40) acre tract, before said forfeiture shall be declared in due time to make said rental or royalty payments or to comply with any other obligation to the State of New Mexico, and that may cause a forfeiture of said Lease titles." (Emphasis added.)

It is interesting to note that the reassignment clause called for a reassignment to the Spurcks and Warrens, each as joint tenants, in exactly the same status as held by them before the assignment to Resler. If as claimed by plaintiff any permanent pooling had taken place, or was intended, the reassignment clause should have provided that an undivided one-third interest in each tract would be reassigned to the Warrens and an undivided two-thirds in each tract would be reassigned to the Spurcks. As counsel so aptly state:

"In other words, if the pooling was to be perpetual then in the event of a reassignment, no matter which tract

was reassigned the ownership should have continued an undivided ⅔rds to the Spurcks and an undivided ⅓rd to the Warrens in order that all parties could continue to so share in all benefits even after the tract was reassigned."

But say counsel for plaintiff, defendants cannot prevail because so to hold would violate both the statute of frauds and the statutes controlling conveyancing of real estate. There is no other way than by a writing, they assert, to divest Mrs. Warren of her 2½ per cent. overriding royalty and $1,000 oil payment, except the fraudulent conveyance from Mrs. Warren to the Spurcks. Of course, these two contentions embraced in plaintiff's Points II and III rest on an assumption that Mrs. Warren retained the ownership of the overriding royalty and oil payment after her acceptance of a reassignment of her 40-acre tract from Resler, as we held she did not.

■■ But a complete answer to these two contentions, if they had merit, arises on the fact that these two Points were not raised at the trial and cannot be raised for the first time on appeal. Furthermore, each constitutes an affirmative defense and must be pleaded. The Spurcks filed a counter-claim below against Mrs. Warren to quiet title to their override and in her answer thereto Mrs. Warren did not affirmatively plead the statute of frauds. Keirsey v. Hirsch, 58 N.M. 18, 265 P.2d

346, 43 A.L.R.2d 929, supports defendants, both on the question of necessity for a pleading as to each affirmative defense, and raising the question for first time on appeal. Points II and III are of no avail to plaintiff.

The record fails to disclose reversible error and the judgment must be affirmed. It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SHILLINGLAW, J., not participating.