[Civ. No. 32334.   Second Dist., Div. One.   Dec. 16, 1968.]

HOWARD TOWNSITE OWNERS, INC., et al., Plaintiffs and Respondents, v. ALICE F. MILLS, as Executrix, etc., Defendant and Appellant.

Webb & Webb and James C. Webb for Defendant and Appellant.

Von Herzen, Hutton, Catlin & Reinjohn and Hampton Hutton for Plaintiffs and Respondents.

FOURT, J.—The executrix of the estate of Wayne Mills herein appeals from an interlocutory judgment in which the trial court determined that a certain oil and gas lease was a valid and subsisting community oil lease and that plaintiffs continued to be entitled to the payment of oil royalties thereunder from the estate.

The following findings of the court are not disputed: On or about July 24, 1940, a group of property owners herein designated collectively as the Howard Townsite Owners, Inc. (sometimes hereinafter referred to as the Owners) entered into a community oil and gas lease covering approximately 20 acres situated in the Townsite of Howard, County of Los Angeles. The lease provides, among other things, that the lessors shall receive a 1/6 royalty on all oil and gas and casing-head gas produced, after certain specified deductions, and that payment is to be made collectively and settlement shall be made on the 25th of each month. The term of the lease is 20 years or so long as oil and gas shall be produced.

Southern California Petroleum Co., the original lessee, drilled a well but later the well was abandoned because it produced no oil, and the lease was assigned to Meeker & Garner who, in turn, assigned it to Feldman. At the time of the assignment by the original lessee 96 lot parcels by signature of their owners remained subject to the community oil and gas lease, and the owners of these lots and their successors in interest were the only persons who remained entitled to participate in potential royalty benefits thereunder. During the period he held the lease, Feldman quitclaimed to the respective owners of all except 11 of these lots, whatever interest he

had under the lease. On one of the retained lots he drilled in 1949 the well which is presently producing oil. Feldman, however, obtained no oil production therefrom and in 1950, about a year after drilling the well, he assigned the lease to Kenneth Mills and Wayne Mills, doing business as Progressive Oil Company. They did some work on the well, discovered oil, and brought the well into oil production. Sometime thereafter Wayne Mills succeeded to the interest of Kenneth Mills and he thereafter, during his lifetime, quitclaimed to their respective owners his interest in 9 of the 11 lots still subject to the lease. He retained, and on or about August 10, 1953, purchased from the Owners by grant deed, the property upon which the wellsite was located. Wayne Mills continued to produce oil from the well during his lifetime, and following his death and her appointment, his executrix continued the oil well operation. The well was producing oil up to and including the time of trial in the present case.

Royalties from the producing well, known as Howard Townsite Community No. 1, were paid to Howard Townsite Owners, Inc., as the collecting agent for the lessors, up to and including July 1953. Although the well continued oil production, Mills at that time ceased making royalty payments. On account of his refusal to make such payments, Howard Townsite Owners, Inc., in behalf of all holders of royalty interests, brought an action in the superior court to obtain an accounting in order to recover unpaid royalties. On December 31, 1958, a judgment was rendered in favor of the collecting agent and royalties were paid pursuant thereto up to and through that date. Although the well continued producing and presently continues in oil production, no further royalties have been paid. Following the death of Wayne Mills the Owners filed creditors' claims in the probate proceedings and these claims were denied by his estate. The Owners thereafter brought the present action for an accounting to claim the royalties which have accrued and remained unpaid since January 1, 1959.

Appellant admitted by answer that the oil and gas lease was executed by the Owners on or about July 24, 1940; that the producing well was developed on Lot 16 in Block L; that royalties had been paid as alleged in the complaint, and that no further royalties had been paid after the date of the prior judgment. She further alleged. however, that the nature and terms of the community oil lease were unknown to her; that Wayne Mills purchased from the Owners the property upon

which the wellsite is located; and that as part of the consideration the Owners waived all further and future royalty benefits under the lease. Although she acknowledged possession of the books and records, and agreed to produce these as required, she refused on the basis above stated to pay royalties. She further sought to restrain the Owners from proceeding to claim royalties; requested that the lease be declared cancelled; and requested the refund of and sought to impose a trust on behalf of the estate upon payments made to the Owners pursuant to the prior judgment. The Owners denied any waiver of royalty rights as to the producing wellsite, claiming that the prior judgment was determinative of their rights to royalties and the absence of a waiver. Ultimately, the matter was submitted to the court on the record and file in this action and the entire record and file, including all exhibits, presented to the court in the prior action.

Although it is difficult to ascertain from her brief the precise nature of her contentions, we conclude that appellant claims that the judgment of the trial court is inconsistent with its findings; that the findings of fact and conclusions of law are deficient because they do not define or determine the respective rights and duties of appellant and respondent, and they do not declare the status of the lease. These contentions, which merely argue the court's determinations and improperly attempt to attack collaterally the prior judgment which was affirmed by this court on appeal, have no sound basis or legal merit.

The interlocutory judgment of the trial court decrees that the lease, which is attached to and incorporated in the judgment, is a valid and subsisting community oil lease; that the lessors thereunder are all of the original signers or their successors; and that so long as there is a producing well on the property covered by the lease these parties are entitled to a one-sixth royalty under the lease. It decrees further that appellant owes to the Owners royalties for oil produced from the leasehold property from December 31, 1958, to the date of the judgment with interest; it appoints Hampton Hutton as collecting agent to receive payment of the judgment "and future royalties subject to the continuing jurisdiction of this court"; and it provides that the attorneys for appellant and respondent shall examine the production records, determine the amount of the "royalties in dollars and cents due plaintiffs plus interest and report the result of such accounting to this court for entry of a final decree."

■ Respondents contend that the judgment was interlocutory and therefore not appealable. We deem the judgment appealable. "A present judgment was ordered for, and the appellants were ordered to pay, the sum found to be due to the plaintiff by reason of the accounting. Nothing further remained to be done in the nature of a judicial action, the rights of the parties were fully established, and all that remained was such proceedings as were necessary to carry the judgment into effect. This was a final judgment. (*Zappettini* v. *Buckles*, 167 Cal. 27 [138 P. 696]), . . ." (*Phillips* v. *Cleaver*, 82 Cal.App.2d 751, 755-756 [187 P.2d 80].)

■ Appellant contends that the findings are unclear in certain respects, including specifically that the court does not define the term "oil right," that the court does not specify clearly what is owned by whom, and that the court merely restates in its findings certain lease terms without clarification. However, it clearly appears that the term "oil right" as used by the court refers to the right of the plaintiffs to receive oil royalties. It also is stated in clear terms that the plaintiffs entitled to oil rights are those set forth in Exhibit B to plaintiffs' complaint wherein is listed each owner by name and the respective lot parcel or parcels attributed to him. Finally, there is no clearer way for the court to find that a 1/6 royalty is payable so long as oil and/or gas are produced by the well than to say so in essentially the same terms as the lease. We find no deficiency in the court's findings of fact in this or any other respect.

■ Appellant asserts further that the conclusions of law and judgment are inconsistent with the findings. She apparently bases this contention upon the fact that the court found that certain parcels of the real property were released and quitclaimed to the owner-lessors by the lessees from time to time. She asserts that those owners to whom property was thus quitclaimed are no longer entitled to share in oil royalties, and therefore only the owners of the 11 lot parcels retained by Feldman and transferred to Mills are entitled to an accounting of royalties. Paragraph 24 of the lease describes the manner in which the Lessee may reduce his obligations and duties under the lease by quitclaiming his interest in all or part of the leasehold property. Paragraph 19 of the subject lease in part provides: "The Lessors hereto pool the oil and gas rights appurtenant to and forming part of their respective properties for the period of this lease and irrespective of any quitclaim by the Lessee hereunder of a part of the demised premises all owners of property forming a part of the hearby

demised premises at the time of the discovery of oil or gas shall thereafter share pro rata in a 1/6th royalty . . . ."

"The distinguishing feature of a lease under which several landowners lease their respective lots as one tract, with the sole and exclusive right to the lessee to drill for and produce oil upon any part of it, is that each owner shares proportionately in the royalties irrespective of the lot or lots upon which oil is discovered. . . . Accordingly, community oil leases commonly provide for the apportionment of benefits among all owners, notwithstanding the surrender by the lessee of any of the lands subject to the lease." (*Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814, 818-819 [129 P.2d 383].) The owners of the lands surrendered and quitclaimed by the various lessees therefore remained entitled to participate in future royalties. (*First Nat. Bank* v. *Standard Oil Co.*, 91 Cal.App. 705 [267 P. 548] ; *Tanner* v. *Title Ins. & Trust Co., supra.*)

Appellant further contends that the court erred in finding that at the time Wayne Mills purchased by grant deed Lot 16 in Block L upon which the producing wellsite is located, plaintiffs waived future royalty benefits under the lease only as to Lots 8, 9, 10, 11, 12, and 14 of Block L and not as to the other lots constituting the 11 quitclaimed properties. Appellant directs our attention to the pretrial order wherein it is stated: "Plaintiff Howard Townsite Owners Inc. admits having waived all its rights to royalties under said lease, as to nine (9) of those certain lot parcels, described as—'Lots 8 to 18 inclusive, Block L, Townsite of Howard, Los Angeles County, California.' '' That statement is accurate insofar as it goes. However, the court's findings that only a limited waiver occurred were based upon the determinations of the court, affirmed on appeal, in the prior litigation of the plaintiffs' rights to royalties. As the appellate court therein observed, (*Howard Townsite Owners, Inc.* v. *Progressive Oil Co.*, 188 Cal.App.2d 24, 29 [9 Cal.Rptr. 856]) : "The judgment went against the defendants because, on the special question put to them, the jurors came to the conclusion that the plaintiff had not waived its right to the royalties measured by all its lots, but only as to the few." The lots thus referred to were nine out of the eleven lots quitclaimed but did not include the property upon which the wellsite is located. Appellant is estopped to raise this issue which was earlier determined adversely to her. "In applying the doctrine [of res judicata] the cases recognize a distinction between the effect of a judgment operating by way of *estoppel*

in a later action upon a *different* cause of action and one operating by way of *bar* against a second action upon the *same* cause of action. [Citations.]'' (*Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636, 637-638 [134 P.2d 242].) ▇ ''Collateral estoppel, or estoppel by judgment, is the secondary aspect of res judicata. A final judgment in a prior action between the same parties, or their privies, prevents the relitigation in a subsequent action between them of issues of fact, actually and necessarily litigated and determined between them in the prior action, though the causes of action in the two actions differ. [Citations.]'' (*Berry* v. *City of Santa Barbara*, 248 Cal.App.2d 438, 445 [56 Cal.Rptr. 553].)

▇ Appellant further contends that the former judgment was incorrect and that a trust should be imposed on the funds paid to the plaintiffs pursuant thereto because they were unjustly enriched by the receipt thereof. Appellant, however, fails to allege extrinsic fraud and her attempt to attack collaterally a judgment which has become final following an appeal cannot be sustained. ''On a collateral attack, any attempt to show mere error of the court must necessarily fail. The judgment is conclusive unless wholly invalid on its face, that is, unless its invalidity appears from the judgment roll. [Citation.]'' (*Estate of Keet,* 15 Cal.2d 328, 333 [100 P.2d 1045].) There is no merit in appellant's contention.

▇ Appellant further contends that the court improperly awarded interest on the unpaid royalty amounts. The law provides that for the breach of an obligation to pay money, in the absence of a contract provision for interest, interest shall be awarded from the time the money becomes due and payable. (Civ. Code, § 3302; *Budget Finance Plan* v. *Sav-On Food Club, Inc.*, 44 Cal.2d 565 [283 P.2d 694].) The lease provides that ''settlement shall be made by lessee on or before the 25th day of each month for accrued royalties for the preceding calendar month'' hence the time for payment is certain and interest was properly awarded on the royalty sums as the right to each monthly amount accrued.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.