Mtjbbay T. Feeder, J.
This is a motion by the plaintiff for temporary alimony and counsel fees.
The complaint contains two causes of action. The first cause of action is for a declaratory judgment to annul an Arkansas divorce decree obtained by the defendant Robert Ernst on the basis of constructive notice, the wife not having appeared or been served personally, and to declare the nullity of the allegedly void subsequent marriage between the defendant and the codefendant, Helen Nardi, on December 5, 1951. The Arkansas action was commenced November 3,1951 and the decree obtained December 4,1951. The decree is directly attacked on the ground that the husband failed to comply with the three-month domiciliary requirement of Arkansas. The first cause of action was brought under section 1169-a of the Civil Practice Act as it existed prior to September 1, 1963. The second cause of action is for a separation on the grounds of abandonment, cruelty and failure to support and maintain the plaintiff and was brought under former section 1169 of the Civil Practice Act. Plaintiff’s *936 attorneys indicated in their briefs that plaintiff was not proceeding under section 1170-b of that act.
The defendants’ answer, in addition to the usual general denials, contains affirmative defenses to the effect that the divorce decree of Arkansas is valid; that defendant agreed in writing to support plaintiff for a 10-year period which ended in November, 1961; that in any event, the Statute of Limitations bars both causes of action. Said copy is not certified or exemplified but its accuracy and existence are not contested.
The motion for temporary alimony and counsel' fees was returnable and argued shortly before the Civil Practice Law and Bules and the new sections of the Domestic Belations Law went into effect on September 1, 1963 but most of the briefs and papers were received after such date, the last one being served on October 21, 1963. Sections 1169, 1169-a and 1170-g of the Civil Practice Act have been reworded, consolidated and transferred to sections 236, 237 and 240 of the Domestic Belations Law, also effective September 1,1963, resulting in major changes with respect to applications for alimony, temporary and permanent, and counsel fees.
Section 10003 of the Civil Practice Law and Bules and presumably the procedural and remedial provisions of those sections of the Civil Practice Act which were transferred to the Domestic Belations Law, are intended to apply to proceedings still pending and undecided even where the action was commenced and the application for relief was made prior to September 1, 1963. The court finds that it is feasible and will not work an injustice to decide the application herein under the new sections of the Domestic Belations Law inasmuch as procedural and remedial matters are involved. This conclusion was reached in Perryman Burns Coal Co. v. Mandelbaum (40 Misc 2d 426) and this was the law under section 1569 of the Civil Practice Act, which is the counterpart, substantially unchanged, of section 10003 of the Civil Practice Law and Buies (see First Constr. Co. v. Rapid Tr. Subway Constr. Co., 211 App. Div. 184; Matter of Demarse v. Bruckman, 164 Misc. 331, 333).
It has long been the law of this State that in the absence of words of exclusion, a statute which relates to the form of procedure is applicable to pending as well as subsequently commenced proceedings (Matter of Davis, 149 N. Y. 539, 545). In McKinney’s Consolidated Laws of New York (Book 7B, CPLB, pp. 442, 443) the note under Legislative Studies and Beports makes this comment about section 10003: “ It expresses the common law and common sense rule that in procedural matters the new rule is applicable to all proceedings whenever commenced, while *937 giving the court discretion to avoid injustice.” Although there is no provision in the Domestic Relations Law comparable to section 10003 of the Civil Practice Law and Rules, there is no logical or legal reason why the procedural and remedial provisions of sections 236 and 237 of the Domestic Relations Law should not be governed by the same law. To hold otherwise would merely make it advisable for the plaintiff to withdraw the motion and institute it anew or for the court to deny the motion without prejudice to renewing it, all of which would be a vain act and useless waste of time.
The application for alimony pendente lite will be considered first. The plaintiff’s application for temporary alimony is challenged by the defendant on the ground that plaintiff is barred from obtaining such relief because the plaintiff is confronted by and must overcome the presumption of validity accorded to the ex parte divorce decree of Arkansas, in view of the Supreme Court decisions in Williams v. North Carolina (317 U. S. 287, id. 325 U. S. 226). It is undisputed that such a decree is prima facie valid until its validity is impeached by evidence sufficient to establish that the foreign court’s jurisdiction was defective (Matter of Holmes, 291 N. Y. 261; Matter of Franklin v. Franklin, 295 N. Y. 431; Dalton v. Dalton, 270 App. Div. 269, 272). However, defendant argues that plaintiff cannot overcome this presumption except by a final judgment after trial and not by proof, no matter how persuasive, submitted in affidavits on a motion for alimony pendente lite. In effect, the defendant’s contention is that the decree is conclusive until nullified by another judgment and that a motion for temporary alimony is not entertainable because plaintiff cannot possibly show reasonable probability of success. The plaintiff takes the position that evidentiary matter in affidavits submitted on such motion can overcome the presumption of validity so as to show reasonable probability of success and that the plaintiff is not foreclosed from obtaining alimony pendente lite.
The defendant relies on the leading cases of Harris v. Harris (279 App. Div. 542) and Meenan v. Meenan (286 App. Div. 775, affd. 2 N Y 2d 802). The Harris case contains language which, if quoted out of context, seemingly could support the position of either party. Although the opinion states that the judgment of the sister State is valid until its nullity has been proved by competent evidence, there is no indication that this statement is limited to evidence adduced on a trial. The record on appeal in the Harris case disclosed that both sides submitted evidence as to whether or not the residence in the foreign State was bona fide and it quite clearly appeared that the husband in that case *938 did in fact establish a bona fide domicile in the sister State, so that the wife had not demonstrated probability of success in her moving papers.
The defendant refers to an isolated statement in Meenan v. Meenan (supra) to the effect that the validity of the sister State decree can only be determined after a trial. However, it does not appear whether this statement was made as a general proposition of law applicable to all types of actions or whether it was made only in connection with an action brought under section 1170-b of the Civil Practice Act having in mind the particular facts of that case. An examination of the Appellate Division decision and the question of law certified to the Court of Appeals demonstrates that the issue in that case revolved around the power of the Supreme Court to grant temporary relief under the then newly enacted section 1170-b of the Civil Practice Act. The question was answered in the negative because that section by its very terms did not include the power to grant alimony pendente lite. Section 1170-b empowered the court to grant permanent alimony to a wife even where the husband had obtained a valid ex parte divorce in another State. In the instant case plaintiff’s action was not brought under section 1170-b.
Although the court has considerable doubt as to whether the Harris and Meenan cases (supra), would be applicable to the causes of action and facts in the instant case, it is not necessary for the court to come to any final conclusion with respect thereto because even if defendant’s interpretation of those cases be correct, they are no longer controlling in view of the change in law effected by the new sections of the Domestic Relations Law.
Notwithstanding the fact that numerous briefs of opposing counsel were submitted after the aforesaid new sections of the Domestic Relations Law went into effect, neither counsel considered or discussed said law on the erroneous assumption that no changes had been made in transferring the applicable sections of the Civil Practice Act to the Domestic Relations Law. A study of the legislative committee reports discloses that the Advisory Committee on Practice and Procedure delegated the question of changes in the matrimonial laws to the Joint Legislative Committee on Matrimonial and Family Laws which was devoting itself to a study of procedural changes in that area, and that such committee contemplated, suggested and drafted bills for major changes broadening the discretionary power of the court with respect to procedure regarding alimony, counsel fees, child custody and maintenance. The efforts of this committee resulted in the enactment of sections 236 and 237 of the *939 Domestic Relations Law. (See 1961 Report of Joint Legis. Comm, on Matrimonial and Family Laws; N. Y. Legis. Doc., 1961, No. 19, pp. 75, 76 and 98; 1962 Report; N, Y. Legis. Doc., 1962, No. 34, pp. 27, 92, 309.)
Many of the limitations on the court’s discretionary powers have been removed by the new sections of the Domestic Relations Law. Section 236 of the Domestic Relations Law has the headnote “ Alimony, temporary and permanent.” It then provides for temporary as well as permanent alimony in any action brought during the lifetime of both parties to annul a marriage or declare the nullity of a void marriage or for a separation (as in the instant case) or divorce. The fourth sentence of said section provides that such order may be made even where the court refuses to grant the relief requested by the wife by reason of a finding that a divorce decree had been previously granted to the husband in an action in which jurisdiction over the person of the wife was not obtained or even where there has been a failure of proof of the grounds of the wife’s action. The court now has great latitude and the power to grant temporary alimony in the instant case under the liberalized provisions of section 236 of the Domestic Relations Law, so that Meenan v. Meenan (supra) and Harris v. Harris (supra) are no longer controlling regardless of how they are interpreted. (See discussion of section 236 of the Domestic Relations Law in the article by the legal staff of the New York State Joint Legislative Committee on Matrimonial and Family Laws on the editorial pages of the New York Lem Journal of Sept. 10 and 11, 1963.)
Even before promulgation of the new section 236 of the Domestic Relations Law, the court in Shuart v. Shuart (183 Misc. 270) and some text writers (Tripp, A Guide to Motion Practice [Rev. ed.], § 174, p. 421; Rothenberg, Matrimonial Allowances in New York, § 9, pp. 57, 58) had already come to the conclusion that, although it might be difficult to overcome the presumption of validity of a sister State divorce decree, it could be accomplished by affidavits and that plaintiff would be entitled to alimony pendente lite upon demonstrating reasonable probability of success. To the same effect, see discussion at pages 102 and 106 of the 1962 Report of the Joint Legislative Committee on Matrimonial and Family Laws.
At any rate, the Domestic Relations Law, as it now stands, clearly authorizes the court to grant alimony pendente lite in the plaintiff’s separation action notwithstanding the existence of the presumptively valid ex parte Arkansas decree.
Counsel fees and expenses are now controlled by section 237 of the Domestic Relations Law. Said section now incorporates, *940 with amendments, former sections 1169 and 1169-a of the Civil Practice Act. Section 237 not only is applicable to the same actions and proceedings as are designated in section 236 but also is made applicable to three additional actions or proceedings, one of which is an action “ to declare the validity or nullity of a judgment of divorce rendered against the wife who was the defendant in any action outside the State of New York and did not appear therein where the wife asserts the nullity of such foreign judgment ”. This section, as well as the former sections of the Civil Practice Act, authorizes the court to grant counsel fees and expenses either in the final judgment or by orders from time to time before final judgment (cf. Long v. Long, 281 App. Div. 254, 258; Kamen v. Kamen, 284 App. Div. 1047; Sandhouse v. Sandhouse, 12 Misc 2d 308, 310; all decided under section 1169-a of the Civil Practice Act).
The criterion for granting counsel fees is the same as that for awarding alimony, viz.: “ as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties.” The above criterion and the omission of the words “ during the pendency ” of the action, which were contained in sections 1169 and 1169-a of the Civil Practice Act, were meant to eliminate the former bar which prevented the granting of counsel fees for past services. The word “ necessary ” contained in the aforesaid sections of the Civil Practice Act has also been dropped from the new statute. It is therefore now possible to award counsel fees either before or in the final judgment, notwithstanding the fact that the wife may have some available funds.
The above new guideposts will hereinafter be applied to the instant case after the court disposes of another issue raised by the defendant in resisting plaintiff’s application.
The defendants contend that in any event the Statute of Limitations is a bar to plaintiff’s application and that section 53 of the Civil Practice Act, providing for a 10-year limitation, is applicable. Although section 53 has now become subdivision 1 of section 213 of the Civil Practice Law and Rules and provides for a six-year limitation, the longer limitation would apply to the actions herein which were commenced before the Civil Practice Law and Rules became effective (CPLR, § 218).
In deciding this issue it must be borne in mind that there are two causes of action herein: an action for a declaratory judgment and one for a separation. The applicable law with respect to each cause of action is different. With respect to the action for a declaratory judgment, the court is inclined to disagree with the defendants’ contention that the statute began to run *941 from the date that the Arkansas decree was granted. There are many factors which militate against defendants’ position. Firstly, in a court of equity the defendant may not avail himself of the Statute of Limitations where he has obtained any benefits by fraud (Dodds v. McColgan, 229 App. Div. 273, 277; Brown v. Brown, 93 N. Y. S. 2d 63, 76, mod. 275 App. Div. 1068, affd. without opinion 302 N. Y. 556) and defendant would be guilty of a fraud on the court if he misrepresented his domiciliary State. Secondly, he would be guilty of fraud on the plaintiff, with consequent tolling of the statute until the fraud was or should have been discovered, if he shrewdly made support payments until the statute had run, thus intentionally misleading the plaintiff to assume that he did not consider the Arkansas decree (which was silent as to support) a valid decree. Thirdly, the Statute of Limitations does not begin to run until a cause of action accrues and in any action for declaratory judgment no cause of action accrues until a controversy exists (Pollack v. Josephy, 162 Misc. 238; Hebrew Home v. Freund, 208 Misc. 658, 662). Plaintiff contends that the 10-year agreement to support her, signed by defendant before section 1170-b of the Civil Practice Act went into effect, and defendant’s continued support even after the agreement ended, presupposed an undissolved marriage relationship between defendant and plaintiff and that no controversy existed until defendant terminated his support payments after April, 1963.
The court need not, however, decide the issue as to whether the Statute of Limitations applies to the action for a declaratory judgment because plaintiff is clearly entitled to her relief on the basis of her separation action alone (Domestic Relations Law, §§ 236, 237). As to that action, the defendants’ position that plaintiff is also foreclosed by the Statute of Limitations is clearly untenable. One of the grounds for the separation action here is cruelty, predicated upon defendant’s alleged open and notorious adultery in living with and openly holding out Helen Nardi to be his wife. This is a continuing act (Hoffmann v. Hoffmann, 232 N. Y. 215; Rothman v. Rothman, 67 N. Y. S. 2d 96) and as such the question of whether the Statute of Limitations has run is one of fact. The same is true with respect to plaintiff’s cause of action, based on defendant’s failure to support and maintain her.
The defendant’s contention that a five-year Statute of Limitations is applicable under subdivision 5 of section 1161 of the Civil Practice Act (now Domestic Relations Law, § 200, subd. 5), is obviously without merit because the instant cause of action was brought under subdivisions 1 and 4 of section 1161 of the *942 Civil Practice Act (now Domestic Relations Law, § 200, suMs. 1, 4), alleging failure to support and continuous cruelty in that defendant and the codefendant, Helen Nardi, have been openly holding themselves out to be husband and wife and living together and is not predicated on a single act of adultery per se (Robles v. Robles, 81 N. Y. S. 2d 853).
There now remains to be considered whether the court, in its discretion, as “ justice requires, having regard to the circumstances of the case and the respective parties,” is justified in granting relief pendente lite.
The facts in the instant case present a classic example where justice and the circumstances of the case and of the parties require the granting of the wife’s application. The affidavits of the plaintiff, her daughter, and her attorney, contain most persuasive and convincing evidence that the so-called domicile of the defendant in Arkansas was fraudulent and that in fact, during the very months that defendant claimed he was residing in Arkansas, he was actually in New York. The allegations in these affidavits are not substantially contradicted or denied other than by mere half-hearted conclusory statements in defendant’s affidavit, corroborated only by the codefendent, Helen Nardi, that he went to live in Arkansas on the advice of his doctor. He does not state his address in Arkansas and presents no evidentiary facts to support his so-called domicile in Arkansas such as an affidavit of residence from any Arkansas landlord or hotel, cancelled checks or receipts showing payment of rent in said State, telephone listings, change of automobile registration to Arkansas, opening of a bank account in Arkansas, or any of the other easily obtained indicia of residence in Arkansas. Finally, and most important, even if defendant actually resided in Arkansas, it clearly appears that there was no intention to establish a bona fide residence or domicile there. The papers show not merely a reasonable but also a very strong probability of success for the plaintiff. The same can be said of plaintiff’s action for a separation. Plaintiff’s allegations of cruelty and failure to support are amply demonstrated and hardly denied.
An examination of the financial circumstances of the parties disclosed that the plaintiff, 65 years old, has an income of $200 a month derived from social security, a boarder and her son. The defendant, 71 years old, receives social security of $125 a month, and although plaintiff has not been able to prove that he is actively engaged in business, it appears without contradiction that he recently received $50,000 in cash for a part interest in the Long Life Auto Spring Co., Inc., which was evidently a substantial business, and sold the balance of his interest by taking *943 back a $30,000 mortgage which was due October 19, 1963. It is alleged that this mortgage has been assigned to his adopted daughter (the daughter of his alleged present wife), but there is no consideration shown for this assignment, which appears to be a subterfuge. The defendant also admits that he took a trip to Europe in 1962 for which he expended over $3,000, a trip to Florida in 1963, expending $2,000, that he purchased a new car in 1963, and that he is sending his adopted daughter to college at a cost of $5,000 a year. Until April, 1963 defendant was paying plaintiff $50 a week. Defendant’s mode of living and other admitted expenses of the defendant indicate that he has substantial resources.
The fact that the wife has some funds amounting to about $4,000, which she has been using to supplement her income, is no reason for denying her application (Domestic Relations Law, § 237; article of legal staff of the New York State Joint Legislative Committee, supra), although it is a fact to be considered in the light of all the circumstances and her husband’s resources (Waterman v. Waterman, 147 App. Div. 464; Seitz v. Seitz, 192 App. Div. 924; Merritt v. Merritt, 99 N. Y. 643; Judd v. Judd, 1 Misc 2d 965).
The plaintiff is awarded alimony pendente lite at the rate of $25 a week to commence within one week after service of a copy of the order to be entered herein. A counsel fee is to be allowed to plaintiff’s attorneys for past and future services, the amount of which is to be fixed by the trial court, and on account of which amount to be so fixed the defendant is directed to pay the sum of $750, payable $500 within 30 days after service of a copy of the order to be entered herein, and the balance of $250 when the case first appears on the Ready Day Calendar. The expenses of conducting the litigation are also to be fixed by the trial court.
If the action has not yet been added to the calendar, plaintiff is directed to do so within five days after the decision is published.